■ In the Matter of STATE DIVISION OF HUMAN RIGHTS, Petitioner, v. CARL E. GORTON, Respondent.—Proceeding pursuant to section 298 of the Executive Law (part of the Human Rights Law) to enforce an order of the State Commissioner of Human Rights, dated July 22, 1968. Order of the Commissioner modified, on the law, by striking therefrom paragraph "b" of item "2" of the "Ordering Provisions" thereof, which directs respondent to pay to the complainant, Mrs. Hortensia R. Stoyan, compensatory damages of $100 plus "reasonable attorneys' fees"; and petition granted, without costs, to the extent that an order will be granted to enforce the Division's order as so modified herewith. On March 4, 1968, Hortensia R. Stoyan, a librarian employed by the Farmingdale Public Library, filed an initial complaint against respondent with the then State Commission for Human Rights (now known as the State Division of Human Rights, referred to herein as the "Division"). On May 17, 1968, she amended her original complaint. She reiterated her initial charge that respondent had violated subdivision 6 of section 296 of the Executive Law by attempting to incite, compel, etc., the Farmingdale Library Board of Trustees to discharge her because of her creed and national origin; and she added the following charges: (a) that respondent further violated subdivision 6 of section 296 by attempting to incite, compel, etc., the same trustees to discharge her because she had filed the initial complaint, and (b) that he violated and continues to violate subdivisions 1 (par. e) and 7 of section 296 of the Executive Law by retaliating and discriminating against her because she had filed a complaint with the Division. On March 12, 1968, eight days after she had filed her initial complaint, respondent filed written charges with the Board of Trustees against her, which, inter alia, contained the following language: "7. Mrs. Stoyan falsely accused this Trustee of racial discrimination and lodged a complaint with the N. Y. State Human Rights Commission. * * * Furthermore, although no fault of her own and certainly of no consequence when dealing with books, her language background hardly qualifies her to instruct children in a course of 'remedial

reading' sponsored by the Farmingdale Library. In addition, and at the risk of being accused of religious prejudice, I must take exception, as I believe the majority of District 22 residents would also, to having a person who is a member of a religious sect that rejects loyalty to the United States, in a position to influence our children." Mrs. Stoyan is Puerto Rican by birth and a member of the Jehovah's Witnesses sect. On June 13, 1968 and July 1, 1968, a hearing was held by three hearing commissioners for the Division. On July 22, 1968, the Commissioner handed down the determination, findings of fact and opinion by adopting and incorporating them in an order which contained 28 findings of fact and two "determinations". On the basis of these determinations and findings, respondent was directed in the order to cease and desist from (1) attempting to incite or compel the trustees to discharge Mrs. Stoyan because of her creed, her national origin and her filing of the complaint against him and (2) retaliating or discriminating against her because of her filing of the complaint. Respondent was also directed to withdraw the charges he had filed against her with the trustees of the library, pay her compensatory damages of $100 plus "reasonable attorneys' fees", refrain from retaliating or discriminating against anyone who had testified or assisted in any proceeding under the Human Rights Law, etc., and notify the Division's General Counsel of steps taken by him to comply with the order. Respondent argues that his statement of charges against Mrs. Stoyan were misconstrued and that there is no evidence to indicate any attempt by him to force his fellow-trustees to dismiss her. With this we do not concur. The numerous inquiries by respondent as to Mrs. Stoyan's race, religion and maiden name, his constant harassment of her while she was performing her duties, and the incorporation by him in his charges of a gratuitous, baseless, irrelevant and insulting statement concerning her religious sect and "language background", notwithstanding her extensive educational background and vocational excellence, when examined in aggregate, evidence a prejudicial and biased attitude and a pattern of discrimination which the Human Rights Law was designed to combat (cf. *Matter of Holland* v. *Edward*, 282 App. Div. 353, affd. 307 N. Y. 38). It is the opinion of this court that the findings of the Commissioner are supported by sufficient evidence and are therefore conclusive (Executive Law, § 298). However, we are of the opinion that the Division should not have ordered respondent to pay Mrs. Stoyan her "reasonable attorneys' fees" (she was later billed therefore a total of $500) and compensatory damages of $100; accordingly our order of enforcement will modify the Division's order so as to strike out those directions. Settle order on five days' notice. Rabin, Acting P. J., Benjamin, Martuscello and Kleinfield, JJ., concur; Munder, J., concurs in result, with the following memorandum: I concur in the majority's decision insofar as it holds there was substantial evidence to support the finding that respondent's conduct toward petitioner solely on the basis of her being a Jehovah's Witness constituted religious discrimination (see *Fowler* v. *Rhode Island*, 345 U. S. 67). I also agree insofar as the decision disallows the award of counsel fees and compensatory damages. I am troubled, however, by one aspect of the case — an aspect, incidentally, never fully developed in this court since respondent chose to appear *pro se* and without the aid of counsel — and that is the danger that strict implementation of the Executive Law, as in this case, might produce the unintended effect of hindering public officials in the performance of their duties. Respondent is an elected member of the Farmingdale Library Board of Trustees. As a public official (see *Cabin* v. *Community Newspapers*, 50 Misc 2d 574, 576, affd. 27 A D 2d 543), he had a legitimate interest, and even a duty, to report his feelings regarding Mrs. Stoyan's

qualifications or what he considered (rightly or wrongly) her lack of qualifications as a librarian and teacher of remedial reading. Surely, as far as the latter is concerned, her "language background" is not totally irrelevant. There is no claim that respondent acted in bad faith. It seems to me, therefore, that under the circumstances respondent's charges io the Board of Trustees were cloaked with the same qualified privilege which is recognized in libel and slander actions (see 40 ALR 2d 941, 946; *Doyle* v. *Clauss,* 190 App. Div. 838). The reason for the privilege, and the instant proceeding supports it, is that historically it "has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties — suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government" (*Barr* v. *Matteo,* 360 U. S. 564, 571; see *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 282). Admittedly, proceedings under the Executive Law are not actions for libel or slander. There are different policy considerations and legal rules applicable to each. At the same time, however, vigorous enforcement of our anti-discrimination laws, which is a laudable . aim, should not hamstring public officials. A delicate balance must be maintained. Here, where there is no allegation· of malice, respondent's qualified privilege should be recognized and enforced. Accordingly, although I concur in the result reached by the majority, I do so on much narrower grounds.