598 F.2d 1253
 19 Fair Empl.Prac.Cas. 918, 19 Empl. Prac.
Dec. P 9203
Ms. Cidni CAREY, Plaintiff-Appellant,
v.
NEW YORK GASLIGHT CLUB, INC., and John Anderson, Manager of
the New York Gaslight Club, Inc., Defendants-Appellees.
 No. 743, Docket 78-7603.
 United States Court of Appeals,
Second Circuit.
 Argued March 9, 1979.
Decided May 8, 1979.
 
 James I. Meyerson (N.A.A.C.P., New York City, Nathaniel R. Jones and George E. Hairston, New York City, of counsel), for plaintiff-appellant.
 Adele Graham, New York City (Ann Thacher Anderson, General Counsel, State Division of Human Rights, State of New York, New York City, of counsel), for amicus curiae.
 Marvin Luboff, New York City (Kane, Kessler, Proujansky, Preiss & Nurnberg, P. C., New York City, Albert N. Proujansky, New York City, of counsel), for defendants-appellees.
 Before SMITH, MANSFIELD and MULLIGAN, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This is an appeal from dismissal by the United States District Court for the Southern District of New York, Henry F. Werker, Judge, of an action for attorney's fees under 42 U.S.C. § 2000e-5(k). We find error and reverse and remand for allowance of attorney's fees.
 
 
 2
 This is a case of first impression involving the right of a successful party to collect attorney's fees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e Et seq., for proceedings at the state administrative level. Based on the statutory scheme of Title VII, the legislative history and public policy, we reverse the denial below of an attorney's fee award, and hold that such a successful party is entitled to counsel fees under Title VII.
 
 Facts
 
 3
 Appellant Cidni Carey applied for a position as a waitress with appellee New York Gaslight Club, Inc. in 1974. She was not offered a job. Believing that she was denied a position because of her race, Carey filed a complaint with the New York office of the Equal Employment Opportunity Commission ("EEOC").
 
 
 4
 Carey's complaint was referred to the New York State Division of Human Rights by the EEOC, in accordance with the statutory scheme of deferring to state mechanisms for resolving discrimination charges under Title VII. 42 U.S.C. § 2000e-5(c). Carey then filed a formal complaint with the state Division of Human Rights, at that agency's request. The state agency made a finding of jurisdiction and probable cause that unlawful discrimination had taken place. After conciliation efforts had failed, Carey's case was recommended for a public hearing. A hearing was held, concluding in January, 1976.
 
 
 5
 In August, 1976 the Division of Human Rights issued an order finding that the Gaslight Club had unlawfully discriminated against Carey on the basis of her race. The Division also directed the Club to offer Carey a waitress position and to award her back pay. The Gaslight Club appealed this order to the New York State Human Rights Appeal Board, which affirmed the finding of discrimination and order for relief. This decision was also affirmed by the Appellate Division of the New York Supreme Court. 59 App.Div.2d 852, 399 N.Y.S.2d 158 (1st Dept. 1977). The New York Court of Appeals subsequently denied leave to appeal in February, 1978. 43 N.Y.2d 648, 403 N.Y.S.2d 1026, 374 N.E.2d 630 (1978).
 
 
 6
 The EEOC was not directly involved in any of the state proceedings dealing with Carey's complaint. Carey's counsel[1] communicated with the EEOC to inform that office of the course of the state proceedings. In July, 1977 Carey received a Notice of Right to Sue Letter from the EEOC. Within the statutorily required 90-day period,[2] Carey filed a suit in federal district court.
 
 
 7
 In the district court, the only issue presented by Carey was the award of attorney's fees based on her success at the state administrative level, following referral to the state agency by the EEOC. Judge Werker denied the request for attorney's fees, holding that Carey could have been represented by a state-provided attorney if she had wished, and that the filing of a federal court suit while the state administrative claim was still pending did not warrant an award of attorney's fees. For the reasons below, we reverse and remand for consideration of an award of counsel fees.
 
 DISCUSSION
 
 8
 Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e Et seq. The statute sets forth a detailed scheme of enforcement by the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e-5.[3] Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k), provides that
 
 
 9
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .
 
 
 10
 The purpose of this provision for counsel fees is to facilitate the bringing of individual complaints in order to "effectuate the congressional policy against . . . discrimination." Johnson v. Georgia Highway Express,488 F.2d 714, 716 (5th Cir. 1974). See also, Christianburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Such a statute which provides for attorney's fees awards in civil rights cases is aimed at enforcing congressional mandates against discrimination through private actions and should be read "broadly to achieve its remedial purpose." Mid-Hudson Legal Services, Inc. v. G & U, Inc., 578 F.2d 34, 37 (2d Cir. 1978).[4]
 
 
 11
 Though § 706(k) on its surface provides for awards of counsel fees at the court's discretion, the policy developed by the Supreme Court favors awards of fees to successful plaintiffs unless there are special circumstances which would render such an award unjust. See Christianburg Garment Co., supra, 434 U.S. at 416-17, 98 S.Ct. 694. This approach stems from a recognition that it is in the public interest to aid Title VII enforcement through private actions, and a liberal reading of the attorney's fees provision encourages this effort. Albemarle Paper Co. v. Moody, 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), Citing Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam), And Northcross v. Memphis Board of Education, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per curiam). Accord, Rios v. Enterprise Association Steamfitters Local 638 of U. A., 400 F.Supp. 993, 995 (S.D.N.Y.1975), Aff'd 542 F.2d 579 (2d Cir. 1976), Cert. denied, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977).
 
 
 12
 The issue in this case, then, is whether the general policy of awarding attorney's fees to successful plaintiffs in Title VII actions envisions an award to a party who is successful in pursuing her claim before the state human rights agency without having to pursue her case in federal court. There is no real question that Carey prevailed on the merits before the Division of Human Rights.[5] The question is whether § 706(k) encompasses fee awards to complaining parties who succeed at a step in the statutory scheme before they are forced to litigate their claims in federal court.
 
 
 13
 Deference to state mechanisms for resolving discrimination complaints is an integral part of the enforcement process under Title VII,42 U.S.C. § 2000e- 5(c), and submission to state remedies is a jurisdictional prerequisite to EEOC action. See Equal Employment Opportunity Commission v. Union Bank, 408 F.2d 867, 869 (9th Cir. 1968). The statutory framework of Title VII embodies a "federal mandate of accommodation to state action." Voutsis v. Union Carbide Corp., 452 F.2d 889, 892 (2d Cir. 1971), Cert. denied, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972). Thus, there can be concurrent jurisdiction over a complaint by the EEOC and the state agency, Voutsis, supra, 452 F.2d at 892. In addition, oral referral to a state agency of a complaint filed with the EEOC acts to place the complaint in " suspended animation" until the state has terminated proceedings and "fully complie(s) with the intent" of Title VII. Love v. Pullman Co., 404 U.S. 522, 525-6, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).
 
 
 14
 As explained in Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974), the enforcement procedures in Title VII were designed to
 
 
 15
 assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex or national origin. . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit. (Citations omitted.)
 
 
 16
 Thus, state human rights agencies play an important role in the enforcement process of Title VII, since they afford a chance to resolve a discrimination complaint in accordance with federal policy before such a complaint reaches the federal courts.
 
 
 17
 The language of § 706(k) refers to attorney's fees awards in "any action or proceeding under this subchapter." The subchapter does include the description of deferral to state agencies by the EEOC, and uses the term " proceeding" to describe the state processes. 42 U.S.C. § 2000e-5(c). In light of this, and in light of the use of both "action" and "proceeding" in § 706(k),[6] the language of the statute is broad enough to encompass awards of counsel fees for work done in connection with administrative proceedings following referral to a state agency by EEOC.[7]
 
 
 18
 Other circuits favor a broad reading of the attorney's fees provisions of Title VII to include compensation for work done in administrative proceedings. Fischer v. Adams, 572 F.2d 406 (1st Cir. 1978); Parker v. Califano, 182 U.S.App.D.C. 322, 561 F.2d 320 (1977); Foster v. Boorstin, 182 U.S.App.D.C. 342, 561 F.2d 340 (1977). Accord, Noble v. Claytor, 448 F.Supp. 1242 (D.D.C.1978); Smith v. Califano, 446 F.Supp. 530 (D.D.C.1978); McMullen v. Warner, 416 F.Supp. 1163 (D.D.C.1976). While these cases deal with federal employees involved in federal agency procedures, their reasoning supports a similarly favorable result for complainants who succeed in state administrative proceedings pursuant to Title VII.[8]
 
 
 19
 While the complaint resolution process may be factually different for federal complainants than for private employees, the policy reasons for allowing attorney's fees awards for work done on the administrative level are similar for federal and private employees who claim discrimination in violation of Title VII.
 
 
 20
 First, the fact that the opposing party in an administrative hearing will most likely be represented by an attorney is as true in the case of an individual filing a charge against a private employer as it is in the case of a federal employee. See Parker v. Califano, supra, 182 U.S.App.D.C. at 334, 561 F.2d at 332. In the case of a private employer, the disadvantage at which an individual employee who is not represented by counsel would be placed in a state administrative hearing is potentially every bit as great as that of a federal employee confronting a United States agency.
 
 
 21
 Judge Werker ruled below that the need to award attorney's fees in the case of private individuals was not as pressing as in the case of federal employees, since a private complainant appearing before the New York Division of Human Rights could have the option of being represented by counsel provided by the Division. In this regard, he cited § 297(4)(a) of the New York Executive Law (Human Rights), McKinney 1972, which provides that the "case in support of the complaint shall be presented by one of the attorneys or agents of the (D) ivision."
 
 
 22
 We disagree with this conclusion. A brief filed before this court by the New York Division of Human Rights as Amicus curiae points out that the statute provides for Division lawyers to present the case "in support of the complaint," not in support of the plaintiff. Thus, there may be cases in which the position of the Division lawyer is not the same as that of the complaining party. In addition, as noted by the Division, state attorneys are available to represent complaining parties only at the public hearing stage of the administrative process. In the earlier investigative stage no Division attorney is provided to represent a private employee and in the later appellate stage a Division attorney, if one appears, does so as an advocate of the decision rendered by the New York State Division of Human Rights or of the Appeal Board, which may have denied the employee's claim or granted less relief than the complainant sought.
 
 
 23
 The need to retain private counsel at the state administrative stage in a Title VII claim is therefore real. If no counsel is present to represent a complainant at the investigative stage, her complaint may never receive a public hearing because there may be no finding of probable cause or jurisdiction. And if a plaintiff cannot obtain representation at the appellate stage, she may be deprived of review of her claim, and may be forced to pursue her case in federal court even where a resolution through state mechanisms might be possible.[9]
 
 
 24
 Second, denial of awards of attorney's fees for administrative proceedings may encourage needless litigation.[10] As noted in Smith v. Califano, supra, 446 F.Supp. at 534:
 
 
 25
 a party who knew he could recover all fees once he got to court but would recover none if he prevailed at the administrative level would rush to court . . . rather than wait for a final agency decision. . . . Thus, the administrative proceeding (required by Title VII) might be relegated to a pro forma exhaustion step decreasing the likelihood that claims could be resolved without resorting to the courts.
 
 
 26
 Awards of attorney's fees for administrative work further the congressional policy of resolving discrimination complaints before they reach the federal courts just as effectively in cases involving state agencies as in those involving federal agencies. Given the compromise worked out by Congress to provide some deference to state dispute resolution mechanisms, See Voutsis v. Union Carbide Corp., supra, 452 F.2d at 891-92, an interpretation of the attorney's fees provision which favors parties who are successful in state administrative proceedings to the same extent as those who prevail in court is consistent with the legislative intent just as is allowing counsel fees in the context of federal administrative proceedings.
 
 
 27
 Finally, the importance of providing an incentive for a complete development of the administrative record is as relevant to state administrative proceedings as to federal ones. See Smith v. Califano, supra, 446 F.Supp. at 534. If a complaining party is reluctant to present her case fully before a state agency for fear that success at that level would deprive her of an attorney's fee award, the federal courts will not have the benefit of a complete record below when reviewing the case. Thus, courts will have to expend time and energy which might be unnecessary if plaintiffs had an incentive to develop a full administrative record.
 
 
 28
 The cases cited by appellees for the proposition that attorney's fees under Title VII may be awarded only for success in a courtroom context are not applicable to the case at bar. Neither Pearson v. Western Electric Co., 542 F.2d 1150 (10th Cir. 1976), nor Williams v. General Foods Corp., 492 F.2d 399 (7th Cir. 1974), deals with a party who prevailed in administrative proceedings undertaken pursuant to the requirements of Title VII. To the extent that the language of those cases limits recovery of attorney's fees under Title VII to parties who succeed in a court, it is inconsistent with the reasoning of the cases we have cited in the area and we decline to adopt that limitation. See Fischer v. Adams, supra, 572 F.2d 406; Parker v. Califano, supra, and cases cited therein, 182 U.S.App.D.C. 326 n. 13, 561 F.2d at 324 n. 13; Drew v. Liberty Mutual Insurance Co., 480 F.2d 69 (5th Cir. 1973), Cert. denied, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974).
 
 
 29
 A complaining party who is successful in state administrative proceedings after having her complaint under Title VII referred to a state agency in accordance with the statutory scheme of that Title is entitled to recover attorney's fees in the same manner as a party who prevails in federal court. We reverse and remand for further proceedings not inconsistent with this opinion.
 
 MULLIGAN, Circuit Judge, dissenting:
 
 30
 The majority concedes that its holding is without precedent. The appellant successfully established employment discrimination on the basis of race and color in violation of the New York State Human Rights Law in state agency administrative proceedings where she was provided legal counsel in support of her complaint. She is now permitted to recover attorney's fees for additional legal counsel whom she privately retained for those proceedings. The fee recovery is permitted in a federal action where the only issue presented to the district court is the propriety of an award of such fees.[1] Remarkably, the decision is in part justified by the majority on the ground that it will discourage needless litigation. I respectfully dissent.
 
 
 31
 Title VII mandated that the initial complaint made by Ms. Carey to the Equal Employment Opportunity Commission (EEOC) be referred to the New York State Division of Human Rights (the Division). 42 U.S.C. § 2000e-5(c). I agree with the majority that the clear congressional purpose underlying that mandatory referral was to utilize existing state and local equal opportunity agencies in order to settle such disputes at the state level before involving the federal courts. Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Love v. Pullman Co., 404 U.S. 522, 526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). In this case the Division investigated the charge of the complainant, made a finding and determination of probable cause and conducted a public hearing. Carey was successful on the merits, winning an award of compensatory damages based on back pay as well as an order directing that she be employed. The employer appealed to the State Human Rights Appeal Board which sustained the order of the agency. The Appellate Division affirmed and the New York Court of Appeals refused leave to appeal as set forth in the majority opinion. We note that the discrimination found by the agency and sustained by the courts of New York was a violation of the New York State Human Rights Law. N.Y.Executive Law, Article 15 (McKinney's 1972).
 
 
 32
 It seems to me to be fundamental that remuneration of private counsel successful in state agency and state judicial proceedings in vindicating rights under state law should be determined by the law of the state which established the substantive right, created the agency, and provided for judicial review. The State of New York has hardly been indifferent to the evil of racial discrimination in employment. Its relevant remedial procedures predated Title VII by nearly 20 years and are derived from legal antecedents enacted as early as 1909. See N.Y.Executive Law (Human Rights Law) § 297, historical note at 305-06 (McKinney's 1972). It is true that the State of New York has made no statutory provision for recovery of private counsel fees in these cases and it is not disputed that no such award is judicially sanctioned in that State. State Division of Human Rights v. Gorton, 32 A.D.2d 933, 302 N.Y.S.2d 966 (2d Dep't 1969). Nevertheless, New York has devised a procedure to satisfy the complainant's need for counsel in an employment discrimination action. Section 297(4)(a) of the Human Rights Law provides in pertinent part:
 
 
 33
 The case in support of the complaint shall be presented by one of the attorneys or agents of the division and, at the option of the complainant, by his attorney. With the consent of the division, the case in support of the complainant may be presented solely by his attorney.
 
 
 34
 The complainant here was without funds to pay for counsel and retained the services of attorneys employed by the N.A.A.C.P. Special Contribution Fund, Inc. There is nothing in the record before us to indicate any request by these attorneys to present the case solely on behalf of the complainant with the consent of the Division as permitted by the last sentence quoted in section 297(4)(a). The record establishes that the Division assigned an investigator to look into the charges. The Division subsequently found that jurisdiction existed and that there was probable cause to believe that the employer had engaged in an unlawful discriminatory practice in violation of the Human Rights Law. At the ensuing public hearing the complainant was represented by her privately retained attorney and the Division by one of its counsel.[2] On the appeal the complainant was again privately represented and again the Division provided counsel who argued and submitted a brief on Carey's behalf. In all subsequent state legal proceedings this dual representation continued. There is not the slightest hint in the record that at any point the interest of the Division in successful prosecution of the complaint diverged from Carey's interests as complainant. On these facts I believe Judge Werker properly denied an award of counsel fees to the appellant.
 
 
 35
 I continue to adhere to the view I expressed in Mid-Hudson Legal Services, Inc. v. G. & U. Corp., 578 F.2d 34, 37 (2d Cir. 1978), that attorneys who are acting as "private attorneys general" in the civil rights field should receive reasonable compensation for their services. In that case we were construing the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988, which explicitly authorizes the district court in its discretion to award reasonable attorney's fees as part of the cost of bringing an action to enforce any of several civil rights statutes. See 578 F.2d at 36 & n. 1. The action there was commenced in the federal court and the fees to be awarded involved services performed in a federal tribunal. Here the only federal court procedure involved is the instant action. This suit raises only the issue of counsel fees to be awarded for State administrative and judicial proceedings which granted the complainant the full relief requested and which made no provision for compensation for private counsel, presumably because the governing statutory scheme provided state counsel at no expense. Thus, I cannot sensibly characterize these private counsel as private attorneys general whose efforts must be subsidized by defendants in order to encourage plaintiffs injured by racial discrimination to seek legal relief. Compare, e. g., Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401-02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).
 
 Title VII does provide that:
 
 36
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .
 
 
 37
 42 U.S.C. § 2000e-5(k). The complainant here, however, prevailed not in a Title VII proceeding within the federal remedial framework, but rather in a state agency proceeding which provides agency counsel at no expense to the complainant and makes no provision for the compensation of private counsel. Since Congress insisted in Title VII that existing state agency procedures be utilized and New York had followed its procedure long before enactment of the federal scheme, I cannot find in the language or legislative history of Title VII any intent to permit the federal courts to be utilized in connection with such state proceedings merely as a fee dispensing agency. Such a course only promotes the federal litigation which Congress intended to bypass. Had the Congress intended this unusual result the awarding by federal courts of attorney's fees not incurred in the federal framework it could and surely would have explicitly so provided.
 
 
 38
 The majority argues that the need to retain private counsel at the state level is "real." However, the proper response to that need is a matter for the state legislature to determine, not the federal courts. Moreover, whatever the need for private counsel may be in certain situations, none of the alleged inadequacies in the state approach noted by the majority are present in this case. The majority notes that in the investigative stage no Division attorney is assigned to represent a private employee. However, a Division investigator was assigned here and a finding of probable cause was made. There was no suggestion by Carey of any inadequacy in the Division's handling of the investigation. As able private counsel admits in his affidavit of services, "the fact pattern herein was concededly simpler than many of those matters which I otherwise undertake and handle." Indeed, no claim is made in that affidavit for time expended by private counsel in making Any investigation.
 
 
 39
 At the appellate level before the Human Rights Appeal Board and the state courts, the majority finds that a Division attorney, "if one appears," acts as an "advocate of the decision rendered" by the Division or the Appeal Board "which may have denied the employee's claim or granted less relief than the complainant sought." Majority opinion at 1258. But the Division attorney in this case Did appear at all these stages and the Division Did award the complainant all the relief sought.[3] The nebulous distinction made between representation of the complaint and representation of the complainant[4] is non-existent here since the interests of the Division and of Carey remained identical throughout the state proceedings once the finding of probable cause was made.[5] The New York State Human Rights Appeal Board was a respondent in the New York State court proceedings and since its findings and determination coincided precisely with those sought by the complainant, no need for private counsel has been demonstrated.[6]
 
 
 40
 The majority also argues that the denial of awards of attorney's fees in state proceedings may encourage needless federal litigation under Title VII. This claim is not persuasive. The majority decision is the first ever to sanction as award by a federal court for attorney's fees earned in a state action. It obviously can only promote litigation in the federal courts, where district judges are already inundated with calendars of increasing weight and complexity.[7] To require these district courts to fix counsel fees in state actions when the burden of representation has been shared by counsel provided by the state at no cost to the complainant is particularly onerous.[8]
 
 
 41
 The position of the majority is ostensibly bolstered by two considerations which are not convincing. First, we are told that if a party knew he could recover attorney's fees once he got to a federal proceeding but could recover none if he prevailed at the state administrative level, there would be a precipitate rush to the federal forum. However, the Civil Rights Law of 1964, as we have seen mandates recourse to the state agency. 42 U.S.C. § 2000e-5(c). The fact that state law has no provision for awarding fees for private counsel in such an action is no ground for circumventing the statutory deferral to the state agency before pursuing a federal remedy. Appellant here has in fact argued at length in her brief that attempts to gain premature access to the federal courts have not been looked upon with favor. In analogous situations where the state action has not yet been resolved the district court has placed the Title VII complaint on the suspended calendar pending resolution of the state proceeding. See Shudtz v. Dean Witter & Co., Inc., 418 F.Supp. 14, 18-19 (S.D.N.Y.1976). Cf. Rios v. Enterprise Association Steamfitters Local No. 638, 326 F.Supp. 198, 203-04 (S.D.N.Y.1971).
 
 
 42
 The majority suggests, however, that a complainant might be reluctant to present a case fully before a state agency "for fear that success at that level would deprive her of an attorney's fee award." This tactic, observes the majority, would deprive the federal courts of the benefit of a complete record when reviewing the case. I submit that this is not realistic. The person who is the victim of job discrimination because of race or color and is concerned enough to file a complaint with a state agency is not likely to jeopardize the vindication of basic civil rights by failing to present a complete case at that level. Moreover, the complainant in New York is represented, as we have indicated, by state counsel who are fully experienced in the field. If further private counsel is retained it would obviously be unprofessional and unethical to provide less than full service at the administrative level because success at that level might foreclose an award of fees by a federal court. Attorneys who have specialized in the civil rights field are zealous and dedicated. Their performance will not be affected by this decision one way or the other.
 
 
 43
 For these reasons I would affirm the dismissal of the complaint.
 
 
 
 [1]
 We note in passing that Appellant Carey was represented in the state proceedings and in federal court by attorneys on the staff of the National Association for the Advancement of Colored People ("N.A.A.C.P."). The fact that counsel in this case worked with a public interest organization rather than a private firm of course does not affect the application of § 706(k) of Title VII, 42 U.S.C. § 2000-5(k), since attorney's fees under that section are awarded to public interest lawyers in the same manner as to private attorneys. Reynolds v. Coomey, 567 F.2d 1166, 1167 (1st Cir. 1978); Rios v. Enterprise Association Steamfitters Local 638 of U. A., 400 F.Supp. 993, 996 (S.D.N.Y.1975), Aff'd 542 F.2d 579 (2d Cir. 1976), Cert. denied, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977)
 
 
 [2]
 42 U.S.C. § 2000e-5(f)(1). See note 3, Infra
 
 
 [3]
 Pursuant to 42 U.S.C. § 2000e-5(c)-(d), a person who wishes to allege discrimination in violation of Title VII must file a complaint with his or her state or local equal opportunity agency, if such an agency empowered to "grant or seek relief" exists, before the Equal Employment Opportunity Commission may act on it. The state agency then has 60 days in which to process the complaint, after which time the complainant may file a charge with the EEOC. The EEOC then attempts to conciliate the discrimination charge, and may itself bring action against the alleged violator. If the EEOC does not conciliate or take action against the employer, the Commission issues a "Notice of Right to Sue" letter to the complainant, who may then file an action in district court within 90 days. 42 U.S.C. § 2000e-5(f)
 
 
 [4]
 Though Mid-Hudson Legal Services involved the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, rather than Title VII, there are useful comparisons to be drawn between the two attorney's fees provisions. According to the Senate Report on the Civil Rights Attorney's Fees Awards Act, the language of that act "follows the language of Titles II and VII of the Civil Rights Act of 1964," 1976 U.S.Code Cong. & Admin.News, pp. 5908, 5910, and "(i)t is intended that the standards for awarding fees (in that Act) be generally the same as under the fee provisions of the 1964 Civil Rights Act." Id., at 5912
 
 
 [5]
 See Foster v. Boorstin, 182 U.S.App.D.C. 342, 344-45, 561 F.2d 340, 342-43 (1977)
 
 
 [6]
 Statutes should be interpreted whenever possible so as not to render any clause, sentence or word superfluous or redundant. Rockbridge v. Lincoln, 449 F.2d 567, 571 (9th Cir. 1971)
 
 
 [7]
 The legislative history of § 706(k) is not particularly enlightening as to the meaning of "action" or "proceeding." See Appendix in Parker v. Califano, 182 U.S.App.D.C. 322, 335, 561 F.2d 320, 333 (1977). It is true, however, that the attorney's fees provision was left untouched during the 1972 amendment process to Title VII. Additionally, the legislative history of the enforcement scheme embodied in § 706 talks favorably of the need for administrative tribunals to resolve discrimination complaints, and refers to state fair employment practice commissions as well as federal agencies in this regard. 1972 U.S.Code Cong. & Admin.News, pp. 2145-47
 The legislative history of the 1976 Civil Rights Attorney's Fees Awards Act (see note 4, Supra ) also notes that a prevailing party need not have succeeded in a courtroom context to obtain compensation for counsel fees:
 (F)or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief. 1976 U.S.Code Cong. & Admin.News, p. 5912.
 
 
 [8]
 In Parker v. Califano, 182 U.S.App.D.C. 322, 561 F.2d 320 (1977), Judge Wright examines the legislative history and statutory framework of Title VII and concludes that a federal district court has authority to award attorney's fees that include compensation for work done in related administrative proceedings. In discussing the statutory language of § 706(k), which is incorporated into § 717 of Title VII dealing with complaints filed by federal employees, he notes the observation in Johnson v. United States, D.Md. Civil Action H-74-1343 (June 8, 1976) slip op. at 7, Aff'd 554 F.2d 632 (4th Cir. 1977):
 Had Congress wished to restrict an award of an attorney's fee to only suits filed in court, there would have been no need to add the words "or proceeding" to "any action." But "proceeding" is a broader term than "action" and would include an administrative as well as judicial proceeding. 182 U.S.App.D.C. at 327, 561 F.2d at 325.
 The court in Parker goes on to hold that the general enforcement scheme of Title VII would be "seriously impinge(d)" upon by a narrow interpretation of the attorney's fees provision which would preclude compensation for work done on the administrative level. Such an approach to the award of attorney's fees under Title VII
 clashes sharply with the clearly perceived structure and aims of the Title. From the passage of the Civil Rights Act of 1964, the Title VII enforcement scheme has included both administrative proceedings and judicial actions. 182 U.S.App.D.C. at 333, 561 F.2d at 331.
 Therefore, according to this analysis, the provision for attorney's fees should be read to include both phases of the enforcement process.
 
 
 [9]
 Despite the implications of the dissent, the productive role played by private counsel is apparent in this case. First, as admitted by the dissent, no Division counsel participated in the initial hearing on Carey's case before the New York State Division of Human Rights. It is precisely at this first stage that a case charging discrimination may be won or lost, since it is at this stage that a fact-finder develops findings which will be given great deference at later stages of the litigation. We do not agree with the dissent's suggestion that Carey should have waited to see if the Division attorney could win her case for her before retaining private counsel. If the complainant had lost in the initial hearing stage, she might have been in the position of having the Division attorney represent the Defendants against whom she brought the complaint in later proceedings, as the prevailing party below. The establishment of a favorable record in the initial stage is crucial, and so plaintiffs should not be penalized for wishing to obtain representation through retained counsel from the beginning of the proceedings
 The record also supports the conclusion that it was Carey's retained counsel, and not the Division attorney, who pressed her case at all levels. In various orders and records of the proceedings, it was noted that retained counsel represented Complainant Carey, while Division attorneys represented "the Division" (Order of Commissioner Kramarsky, August 13, 1976), "the Commissioner's Order" (Order of State Human Rights Appeal Board, August 26, 1977) and "the State Division" (Order of Appellate Division of New York Supreme Court).
 Additionally, there is no evidence to contradict the affidavit of retained counsel that he was "almost solely responsible for the prosecution and preparation of the state administrative and judicial proceedings, on behalf of the Plaintiff." Given these facts, we cannot agree with the dissent that the function served by retained counsel was in any way superfluous or unnecessary.
 
 
 [10]
 Acts awarding attorney's fees should not be interpreted so as to "encourage plaintiffs to try cases in which reasonable settlement offers have been received, merely to ensure a fee award." Gagne v. Maher, 594 F.2d 336, 340 (2d Cir. 1979)
 
 
 [1]
 The majority speaks of this as an action to recover attorney's fees "at the state administrative level." However, the affidavit of counsel seeks 16 hours ($1600) for appearances in the appellate courts of New York. Of the total of 82 hours expended counsel seeks recompense for some 22 hours for the preparation of memoranda and affidavits in support of the application for attorney's fees
 
 
 [2]
 The Division attorney admittedly was not active in assisting the presentation of Carey's case at this stage of the proceeding. This occurred, however, because of Carey's voluntary decision to retain independent counsel to handle that presentation. See 9 N.Y.C.R.R. § 465.11
 
 
 [3]
 The initial complaint sought relief not only against the Gaslight Club but its manager and assistant manager as well. Since the assistant manager did recommend Carey for the position of cocktail waitress, the Division found no violation of law on his part. However, complainant did not appeal that determination and makes no claim now that relief should be granted as to him
 
 
 [4]
 Whether the language of section 297(4)(a) actually supports this dichotomy between the Division's prosecution of the complaint and a private counsel's presentation on behalf of the complainant seems at least open to some question. For example, the section states: "With the consent of the division the case in support of the complainant may be presented Solely by his attorney." This sentence can be read to imply that absent such consent the statute anticipates joint representation on the complainant's behalf by the Division as well as private counsel. I do not believe it necessary, however, to quibble with the construction of the statute suggested by the Division and accepted by the majority
 
 
 [5]
 The continuing solicitude of the Division for the complainant is demonstrated by its filing of an Amicus brief in this court for the purpose of explaining the pertinent New York law. While this agency, like other state and federal agencies, may well be undermanned, the appropriate remedy for such a problem is state legislative action rather than an unprecedented decision which permits private representation to be determined by the federal courts even absent a showing of need for such representation in a particular case
 
 
 [6]
 The majority argues in footnote 9 that the absence of a Division attorney at the initial hearing establishes the need for the retention of private counsel. However, it was that voluntary retention that created the absence which is now relied upon to establish inadequate state representation. See note 2, supra. The amicus brief here points out that a Division attorney does appear at the hearing "if the complainant has not retained private counsel; if the complainant has retained private counsel the Division attorney appears at the Division's option to protect the public interest."
 
 
 [7]
 The Amicus brief submitted by the Division states that in 1977 it was forced to reassess and restructure the allocation of Division attorneys. This step was necessary because of severe case backlogs resulting from a doubling and redoubling of the Division caseload since 1970. In view of the majority's holding it cannot be gainsaid that a large percentage of these proliferating state actions will now be followed by suits initiated in federal district courts simply to recover attorney's fees unobtainable in the state proceeding
 
 
 [8]
 The majority claims to find support for its position in cases such as Fischer v. Adams, 572 F.2d 406 (1st Cir. 1978), Parker v. Califano, 182 U.S.App.D.C. 322, 561 F.2d 340 (1977) and Foster v. Boorstin, 182 U.S.App.D.C. 342, 561 F.2d 340 (1977). See majority opinion at 1257 - 1258. But in those cases, as even the majority acknowledges, a federal court was reviewing federal agency action and adjudicating alleged violations of federal law. Moreover, unlike the State of New York, the federal agency did not ensure the assistance of counsel to complainants in proceedings before it. Therefore, the majority's reliance on these cases is misplaced