**Dale H. JURGENS, et al., Plaintiffs,**

**v.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Defendants.**

Civ. A. No. CA 3–76–1183–G.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 15, 1987.

average weekly maintenance expense in the amount of $145.66.

Dale Howard Jurgens, Thomas H. Dixon, Wm. L. Keller, Allen Butler, David M. Ellis, Clark, West, Keller, Ellis & Butler, Dallas, Tex., for plaintiffs.

Mary Ann Strobridge, Boulder, Colo., for plaintiff Dennis Cissel.

Abner W. Sibal, Gen. Counsel, Constance Dupre, Associate Gen. Counsel, Issie L. Jenkins, Deputy Gen. Counsel, Michael McGoings, E.E.O.C., Washington, D.C., Maria S. Vellios, E.E.O.C., Dallas, Tex., Michael Reiss, Regional Atty., E.E.O.C., Seattle Dist. Office, Seattle, Wash., James A. Rolfe, U.S. Atty., Charles D. Cabaniss, Asst. U.S. Atty., Dallas, Tex., Richard Willard, Asst. U.S. Atty. Gen., Richard Greenberg, Judith F. Ledbetter, Anthony W. Norwood, Catherine Lanctot, Attys., Dept., of Justice, Civil Div., Joan Hannan, Office of Gen. Counsel, Washington, D.C., for E.E.O.C.

Gould, Yaffe and Golden, Roy Yaffe, Philadelphia, Pa., for class member Mark S. Greent.

George P. McCartin, Berkeley, Cal., pro se.

Douglas B. Huron, Kator, Scott, Heller, Washington, D.C., for class members Allan Danoff, Robert Harwin, Jason Hegy, Richard Theis.

Gerald Kiel, pro se.

Martin K. Denis, Fox and Grove, Chartered, Chicago, Ill., pro se.

Carson L. Owen, Memphis, Tenn., pro se.

Richard M. Sharp, John Townshend Rich, Shea & Gardner, Washington, D.C., for court appointed masters.

Andrew J. Ruzicho, Dallas, Tex., Arnold Friedman, Friedman & Friedman, Pittsburgh, Pa., for class member Bukes.

Marc A. Comras, Norman Jackman, Comras & Jackman, Boston, Mass., for John J. Martin.

A. Thomas Hunt, Hunt & Cochran-Bond, Los Angeles, Ca., for class member Jules H. Gordon.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion of plaintiffs Dale H. Jurgens and the members of the class he represents to order Clarence Thomas, chairman of defendant Equal Employment Opportunity Commission ("EEOC"), to show cause why he should not be ordered to request payment from the General Accounting Office ("GAO") of interim attorneys fees and expenses awarded July 29, 1983 and August 29, 1983. In the alternative, plaintiffs request that the court order the EEOC to request payment from the GAO of the awards and to make all certifications necessary for payment. Upon review of the motion, response, reply, supplemental briefs and exhibits, the court finds that plaintiffs' motion is meritorious. Accordingly, for the reasons stated below, plaintiffs' motion is granted.

### I. *Nature of the Case*

This employment discrimination class action, now entering its second decade, was originally filed in 1976. On September 9, 1982, at the conclusion of the liability phase of the action (Phase One), the court issued a memorandum opinion finding that the EEOC had violated Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. On July 29, 1983, the court entered an order granting declaratory and injunctive relief and another order assessing interim attorneys fees and reimbursement of interim expenses. On November 30, 1983, the EEOC wrote a letter to the

GAO requesting payment of interim attorneys' fees awarded by the court on July 29 and August 29, 1983. The GAO never arranged for payment of these fees.

The EEOC has taken the position that the payment of interim attorneys fees and expenses must be made from the judgment fund, which is governed by 31 U.S.C. § 1304(a). The EEOC further asserts that before payment of the interim award can be made, it must be certified by the Comptroller General pursuant to § 1304(a)(2). Moreover, it contends, the award must be payable pursuant to 28 U.S.C. § 2414.

Section 2414 concerns the payment of final judgments, defined as those judgments from which the Attorney General has determined that no appeal shall be taken. Since entry of the court's order dated July 29, 1983, the EEOC has taken the position that there is no final judgment because the decision of whether or not to appeal the findings in Phase One will be made by the Attorney General when a final judgment is entered in this case.

In April, 1984, plaintiffs moved for a judicial declaration of the finality of Phase One liability. On June 7, 1984, this court denied plaintiffs' motion without opinion. Following that denial of plaintiffs' motion for declaration of finality, however, over 92% of the claimants in the relief proceedings (Phase Two) have accepted offers of judgment under Rule 68, Fed.R.Civ.P.

On March 31, 1986, plaintiffs filed the instant motion. They assert that over $142,000.00 of non-recoverable interest has been lost since entry of the 1983 interim fee awards, and that continued non-payment of the interim awards will cost class counsel approximately $3,000.00 per month in lost interest.

## II. *Analysis*

It is well-established that a person may be considered the "prevailing party" in a civil rights action (and thus entitled to an award of attorneys' fees) without having obtained a final judgment. *Hanrahan v. Hampton,* 446 U.S. 754, 756–757, 100 S.Ct. 1987, 1988–89, 64 L.Ed.2d 670 (1980). Congress intended to permit interlocutory fee awards to a party "who has established his

entitlement to some relief on the merits." *Id.* at 757, 100 S.Ct at 1989. The Fifth Circuit, like its sister courts in other circuits, has approved interim attorneys' fees awards in protracted employment discrimination class actions once the trial court has made a finding on liability issues. *James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 358 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *see also Nicodemus v. Chrysler Corporation-Toledo Machining Plant,* 445 F.Supp. 559, 560 (N.D.Ohio 1977).

The EEOC does not dispute the court's general authority to make interim awards in employment discrimination class actions. The EEOC certified that the court's findings in its order of July 29, 1983 awarding interim fees warranted the court's award of $426,000.00 for work performed through September 22, 1982. *See* Order Assessing Interim Attorneys' Fees and Reimbursement of Interim Expenses, July 29, 1983, p. 15. Nor does the EEOC dispute the fact that plaintiffs were the prevailing parties in Phase I of this litigation. Its letter to the GAO of November 30, 1983 requesting payment of fees noted, "Title VII principles ... favor the award of interim attorneys fees and expenses to prevailing plaintiffs at the close of protracted Phase I proceedings." Letter to the GAO Requesting Payment of Attorneys Fees and Expenses, November 30, 1983, p. 2.

The specific issue on which this motion turns is whether a court's award of interim attorneys fees against the United States is payable only after entry of a final order which is not appealed, notwithstanding specific language in 42 U.S.C. § 2000e–5(k) that the United States must be treated as a private person for purposes of awarding attorneys' fees. The court concludes that this statute means what it says: an award of interim fees against the United States is payable in the same manner as an award of interim fees against a private person. This interpretation of the statute is most consistent with its literal language, its legislative history, the case law construing it, and (perhaps most importantly) the

public policy underlying the award of attorneys' fees in civil rights cases.

The proper starting point for the court's inquiry is, of course, the statute itself. Section 2000e–5(k) provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, *and the Commission and the United States shall be liable for costs the same as a private person.*

42 U.S.C. § 2000e–5(k) (emphasis added).

Originally, the award of attorneys' fees under this section was inapplicable to the United States. In 1972, however, Congress enacted 42 U.S.C. § 2000e–16(d), which made the provisions of § 2000e–5(k) applicable to employment discrimination actions against the federal government. The language of § 2000e–5(k) is clear and unambiguous. To the extent that a private person is liable for costs, including a reasonable attorney's fee, so too is the Commission (i.e., the EEOC) and the United States. To the extent that a private person must pay an award of attorneys' fees and expenses, so too must the Commission and the United States.

 The EEOC argues that in order to grant the plaintiffs the relief they seek, it must be shown that the United States has waived its sovereign immunity to permit payment of interim attorney's fee awards in Title VII cases. *See* Defendants' Opposition to Plaintiffs' Motion for Show Cause Order or Mandatory Injunction, p. 4. This court agrees. The EEOC further argues that there must be an explicit waiver of sovereign immunity in order for claims to be brought and judgments to be paid against the United States. *Id.* This court again agrees. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *United States v. Testan,* 424 U.S. 392, 400–401, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976).

This court disagrees, however, with the EEOC's contention that the United States has not waived its sovereign immunity to permit the payment of interim fee awards in Title VII cases. As stated previously, the language of § 2000e–5(k) is clear: for purposes of liability for fees as part of court costs, the EEOC and the United States stand in the same position as any other party. In a recent decision addressing the government's immunity from interest awards, the Supreme Court declared that "[i]n making the Government liable as a defendant under Title VII, Congress effected a waiver of the Government's immunity from suit, and from costs including reasonable attorney's fees ...". *Library of Congress v. Shaw,* —— U.S. ——, 106 S.Ct. 2957, 2966, 92 L.Ed.2d 250 (1986).

The EEOC's attempt to depart from the plain language of the statute does violence to its meaning. "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), *quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The EEOC has not produced evidence of a contrary legislative intent, nor has this court found any. The legislative history of the Equal Employment Opportunity Act of 1972, which made the government liable for payment of attorneys' fees to the same extent as a private person, is filled with language indicating Congress's intent that the civil rights laws be applied to the federal government with the same vigor as they are to private employers:

> The Federal Service is an area where equal employment opportunity is of paramount significance. Americans rely upon the maxim, "government of the people," and traditionally measure the quality of their democracy by the opportunity they have to participate in governmental processes. It is therefore imperative that equal opportunity be the touchstone of the Federal system.

H.Rept. No. 92–238, 1972 U.S.Code Congressional and Administrative News 2137, 2157.

The EEOC argues that statutes waiving the federal government's sovereign immunity must be strictly construed. This argument is entirely correct. Waivers of sovereign immunity must be construed strictly in favor of the sovereign and not enlarged "beyond what the language requires." *Library of Congress v. Shaw*, above, 106 S.Ct. at 2963, *quoting Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983). For the reasons already discussed, however, Congress's waiver of the government's sovereign immunity with respect to liability for attorney's fees is direct and clear. The court's interpretation of § 2000e–5(k) complies with the rule of strict construction regarding the waiver of sovereign immunity because it goes no further than what the statutory language requires.

■ The court has made a diligent search for prior case law addressing the precise issue of whether awards of interim attorneys' fees in Title VII cases must be paid by the United States before a final judgment is entered. The court has found only one other decision, and in that case another judge of this court concluded that an interim award of attorneys' fees against the government was immediately payable. *Shafer v. Commander, Army and Air Force Exchange Service ("AAFES")*, Docket No. CA 3–76–1246–R in the United States District Court for the Northern District of Texas, Memorandum Opinion, December 3, 1985, at 1–2.[1]

*Shafer*, like the case at bar, is an employment discrimination class action.[2] After trial on the issue of liability, the trial court found that the AAFES had discriminated against the plaintiff class on the basis of sex (just as this court found the EEOC guilty of discrimination at the conclusion of Phase One). Plaintiffs, as prevailing parties, then filed a motion for attorneys' fees. At the hearing on the interim award, the AAFES took the same position that the EEOC now takes, that any award of attorneys' fees was not payable because there was no final judgment.[3] The AAFES argued that because the interim fee award was payable under 31 U.S.C. § 1304(a), that statute prohibited payment until the judgment was final under 28 U.S.C. § 2414. The trial judge summarily dismissed these arguments and ordered the AAFES to make payment within 17 days of the entry of his order,[4] noting that plaintiffs were clearly entitled to an award of fees under *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310 (5th Cir.1977), as well as this court's 1983 order in the instant case awarding interim fees and expenses. *Shafer* Memorandum Order at 2.

This court believes that *Shafer* is controlling and that immediate payment of the interim fees previously awarded in this

1. In its appeal to the Fifth Circuit, the AAFES described the question of the United States' payment of interim fees in an employment discrimination case as one of first impression. Appellant's Brief, *Shafer v. AAFES*, Docket No. 85–1790 in the United States Court of Appeals for the Fifth Circuit, at 6.

2. Both parties in this case acknowledge the relevance of the *Shafer* decision. The EEOC and the plaintiffs included briefs filed in the appeal of that case to the Fifth Circuit in their filings on this motion. The EEOC argued that this court should postpone ruling on the motion at bar until the Fifth Circuit ruled on the *Shafer* appeal. *See* Defendants' Opposition to Plaintiff's Motion for Show Cause Order or Mandatory Injunction at 4.

3. At the hearing, there was some discussion of whether the AAFES was a judgment fund agen-

cy subject to the provisions of § 1304 and § 2414. The judge did not mention this factor in his memorandum opinion. Nevertheless, the AAFES continued to argue on appeal that the award was not payable due to the provisions of § 1304 and § 2414.

4. The United States paid the award under threat of sanctions. *See* Defendants' Opposition to Plaintiff's Motion for Show Cause Order or Mandatory Injunction at 4. The AAFES continued to press its argument on appeal that fee awards were not immediately payable, but on September 25, 1986 the Fifth Circuit dismissed the appeal. It observed that an interlocutory appeal did not lie under 28 U.S.C. § 1292(b) simply because AAFES raised the issue of sovereign immunity. *Shafer v. Commander, Army and Air Force Exchange Service*, No. 85–1790, September 26, 1986, slip op. at 2 [801 F.2d 397 (table) ].

case is required. The argument for immediate payment of fees is even more compelling here than in *Shafer*, because there the parties had not agreed on the amount of Phase One fees and the defendants had not acknowledged at the end of Phase One that plaintiffs were prevailing parties.

In both this case and *Shafer*, the defendants argued that they could not pay the interim awards due to the restrictions of §§ 1304 and 2414. When faced with a citation for contempt of court, however, the defendants in *Shafer* made immediate payment. The court believes that the EEOC can also arrange for immediate payment of this court's interim award.

In support of its opposition to the plaintiffs' motion for payment of interim fees, the EEOC relies on the Supreme Court's recent decision in *Library of Congress v. Shaw*, —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Contrary to the EEOC's position, however, the court finds support for its conclusion that the interim fee award against the EEOC is payable at this time because in that case the Supreme Court specifically stated that in making the government liable for costs including fees, Congress waived the government's sovereign immunity from payment of fees and expenses as part of costs. *Library of Congress v. Shaw*, —— U.S. at ——, ——, 106 S.Ct. at 2964, 2966.

That case held that Congress, in enacting Title VII, did not waive the government's traditional sovereign immunity from interest. *Id.* 106 S.Ct. at 2966. Although the Court noted that 2000e–5(k) makes the United States liable for "costs" including a reasonable fee, it drew a distinction between interest and costs. "Prejudgment interest, however, is considered as damages, not a component of 'costs.'" *Id.* at 2965. Thus, the fact that the Court in *Shaw* interpreted 2000e–5(k) to prohibit an award of interest as part of costs is in no way inconsistent with this court's conclusion that payment of an award of interim fees under § 2000e–5(k) is not barred by 31 U.S.C. § 1304 and 28 U.S.C. § 2414.

The EEOC also cites an opinion by the Comptroller General for the proposition

that this court's award of interim fees is not immediately payable because of the provisions of 31 U.S.C. § 1304(a) and 28 U.S.C. § 2414. 63 Comp.Gen. 260 (1984). The Comptroller General's opinion addressed the issue of whether the § 1304 judgment fund was available to pay attorney's fees under 28 U.S.C. § 2412(b). The opinion was largely devoted to a discussion of the Equal Access to Justice Act; it did state, however, that awards under § 2000e–5(k) were governed by 31 U.S.C. § 1304 and 28 U.S.C. § 2414 and that such awards, "when final, are paid." 63 Comp. Gen. at 261.

The Comptroller General reached this conclusion without any discussion of the statutory language of 42 U.S.C. § 2000e–5(k), the legislative history of the attorneys' fees provision in Title VII, the public policy underlying that provision, or the case law discussing awards of attorneys fees in civil rights cases. As previously mentioned, the language of the statute, the legislative history, and available case law all indicate that interim fee awards against the United States are payable at the time of the award.

■ Thus, to the extent of any conflict, the court concludes that the specific provision governing fees awards in Title VII cases, 42 U.S.C. § 2000e–5(k), must prevail over the provisions in 28 U.S.C. § 2414 governing payment of judgments generally. This conclusion is strengthened by the fact that § 2414 predates § 2000e–5(k) by several years. Under general principles of statutory construction, the newer, more specific provisions of 2000e–5(k) must prevail over the older, more general provisions of 28 U.S.C. § 2414.

■ Although the case law addressing the precise issue of payment of interim awards assessed against the government in Title VII cases is sparse, there are a number of cases interpreting the policy underlying the attorneys' fees provision which support the court's conclusion that immediate payment of interim fees is consistent with the overall policies and goals of Title VII. A number of courts have indicated that in enacting the fee awards provision,

Congress intended to encourage individuals to seek judicial relief. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716 (5th Cir.1974). Furthermore, private enforcement is essential order to achieve Title VII's goal of eradicating employment discrimination. *Bolton v. Murray Envelope Corporation*, 553 F.2d 881, 884 (5th Cir. 1977); *see also Carey v. New York Gaslight Club, Inc.*, 598 F.2d 1253, 1256 (2d Cir.1979), *aff'd*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). Thus, the attorneys' fees provisions should be liberally applied in recognition of the importance of private enforcement. *Johnson v. Georgia Highway Express*, 488 F.2d at 716.

Adoption of the contrary position urged on this motion by the EEOC would further delay class counsel's receipt of fees in a case which is now over 10 years old. Counsel for the plaintiff class have expended over 4800 hours and advanced expenses of over $82,000.00. Plaintiffs' Motion for Show Cause Order or Mandatory Injunction at 10. As previously mentioned, plaintiffs assert that the EEOC's nonpayment of the interim fee award has cost them over $142,000.00 in non-recoverable interest, and continues to cost them over $3,000.00 for each additional month payment is delayed. October 9, 1986 letter to the court from class counsel at 2. Delays such as the one in this case pose a very serious threat to the enforcement structure of Title VII. Long delays dampen the enthusiasm of attorneys to take on these kinds of cases and ultimately undermine Title VII's purpose of encouraging private enforcement to aid in the elimination of discrimination. *James v. Stockham Valves & Fittings Co.*, above, 559 F.2d at 358–59; *Parker v. Lewis*, 670 F.2d 249, 250 (D.C. Cir.1982); *Kyles v. Secretary of Agriculture*, 604 F.Supp. 426, 437 (D.D.C.1985).

Requiring the EEOC to pay the interim award, by contrast, will further Title VII's goal of eliminating discrimination through private enforcement. It will also prevent government attorneys from using a long delay in the payment of an award of fees as a weapon which might be used to interfere with the effective representation of Title VII plaintiffs.[5]

Finally, this court notes that all of the time spent by counsel for the plaintiff class during Phase One was a necessary prerequisite for each class member to reach Phase Two. Thus, class counsel's efforts in Phase One directly benefited the claimants who have obtained relief in Phase Two (over 92% of all claimants as of this date). It would indeed be unjust if class counsel, who have performed an invaluable service over the past decade in protecting the rights of the class, were forced to wait several more years for payment, while counsel for individual claimants who sign Rule 68 judgments are able to recover their fees without significant delay. By comparison with class counsel, counsel for some individual claimants have been involved in this litigation for a relatively short time and the scope of their representation has been much more limited. Immediate payment of this court's interim award to class counsel is appropriate inasmuch as their efforts, in establishing the EEOC's liability, is the foundation on which the relief granted to individual claimants has been built.

### III. *Conclusion*

For the above-stated reasons, this court hereby orders that, by February 10, 1987, EEOC pay the interim attorneys fees and expenses awarded in this court's orders of July 29, 1983, and August 29, 1983. Failure to comply with this order may subject the EEOC to appropriate sanctions. Such sanctions may include, among other things, contempt of court.

SO ORDERED.

---

**5.** The situation in the case at bar is a disturbing example. The EEOC continues to insist that the interim award should not be paid because it might appeal the liability finding made in 1982. By now, however, the EEOC has entered into Rule 68 judgments with well over 92% of all class claimants. These Rule 68 judgments are final and will be unaffected by any subsequent appeal and reversal of liability findings. Thus, the reed supporting the EEOC's nonpayment of the interim award grows slimmer with each Rule 68 judgment.