MARATHON OIL COMPANY and Mobil Oil Exploration & Producing Southeast, Inc., Plaintiffs–Appellees,

v.

UNITED STATES, Defendant–Appellant.

No. 97–5146.

United States Court of Appeals, Federal Circuit.

Dec. 28, 2000.

Rehearing Denied Feb. 16, 2001.

Carter G. Phillips, Sidley & Austin, of Washington, DC, argued for plaintiffs-appellees. On the brief were E. Edward Bruce, Steven J. Rosenbaum, and Karen

A. Ballotta, Covington and Burling; and Richard D. Bernstein and Griffith L. Green, Sidley & Austin, of Washington, DC.

Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were, David W. Ogden, Assistant Attorney General, and David M. Cohen, Director.

Before NEWMAN, Circuit Judge,
PLAGER, Senior Circuit Judge,* and
RADER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

This case returns to the Federal Circuit upon reversal by the Supreme Court[1] of this court's decision reported at *Marathon Oil Co. v. United States,* 177 F.3d 1331 (Fed.Cir.1999). We now apply the Court's ruling to the judgments of the Court of Federal Claims,[2] and affirm the judgments of that court.

■ Plaintiffs Marathon Oil Company and Mobil Oil Exploration & Producing Southeast, Inc. ("the companies") in 1981 entered into contracts with the United States for ten-year renewable rights to explore for and develop oil and gas resources of certain tracts of the outer continental shelf offshore North Carolina. The companies paid the United States up-front "bonus" payments, $78,257,565 paid by Mobil and $78,255,217 by Marathon. The contracts also provided for annual "rental" payments.

Several statutes were thereafter enacted concerning this area of exploration. As explained by the Supreme Court, the enactment in 1990 of the Outer Banks Protection Act ("OBPA"), Pub.L. No. 101–380,

---

1. *Mobil Oil Exploration, Producing Southeast, Inc. v. United States,* 530 U.S. 604, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000) (hereinafter *"Mobil "*).

2. *Marathon Oil Co. and Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* No. 92–331C (Fed.Cl. July 24, 1997); *Conoco, Inc. v. United States,* 35 Fed.Cl. 309 (1996) (nineteen parties including Marathon and Mobil).

104 Stat. 484, effected a breach of these contracts:

> [T]he new statute, OBPA, required Interior to impose the contract-violating delay. It therefore made clear to Interior and to the companies that the United States had to violate the contracts' terms and would continue to do so.

> . . . . .

> We do not say that the changes made by the statute were unjustified. We say only that they were changes of a kind that the contracts did not foresee.... Hence, in communicating to the companies its intent to follow OBPA, the United States was communicating its intent to violate the contracts.

*Mobil*, 120 S.Ct. at 2435 (citation omitted). The Court concluded that "the Government broke its promise; it repudiated the contracts; and it must give the companies their money back." *Id.* at 2438.

The Court of Federal Claims had reached this conclusion, and had rejected the government's argument that any restitution should be offset by the asserted reduction in the market value of the leases due to the reduced price of oil and gas at the time of the government's breach. On appeal the Federal Circuit did not reach the issue of offset, for it was rendered moot by this court's decision as to liability. Now on remand from the Supreme Court, the government argues that the amount of restitution should be reduced by this offset. We requested further briefing and heard reargument of this question.

In ruling that the companies are entitled to restitution, the Court stated:

> If the Government said it would break, or did break, an important contractual promise ... the Government must give the companies their money back. And it must do so whether the contracts would, or would not, ultimately have proved financially beneficial to the companies.

The Restatement illustrates this point as follows:

> "A contracts to sell a tract of land to B for $100,000. After B has made a part payment of $20,000, A wrongfully refuses to transfer title. B can recover the $20,000 in restitution. The result is the same even if the market price of the land is only $70,000, so that performance would have been disadvantageous to B."

*Mobil*, 120 S.Ct. at 2429–30 (quoting *Restatement (Second) of Contracts* § 373 cmt. a, illus. 1 (1979)). The Court also gave the example: "If a lottery operator fails to deliver a purchased ticket, the purchaser can get his money back-whether or not he would have won the lottery." *Id.* at 2437. Thus the Court reaffirmed the principle that a reduction in market value is irrelevant to the non-breaching party's right to restitution of the full amount paid.

The government again argues that return of the bonus payments must be reduced by the decreased value of the leases due to the reduction in the market price of oil and gas at the time of the breach, stating that the Supreme Court's rulings were made "in passing" and are "dicta." That is plainly incorrect. The government's argument was presented to the Court, and was decided. The Court ruled that "the oil companies gave the United States $156 million ... the Government must give the companies their money back." *Mobil*, 120 S.Ct. at 2437–38. Although the law of restitution credits any tangible benefits that were imparted under the contract before its repudiation, *e.g.*, *Arizona v. United States*, 216 Ct.Cl. 221, 575 F.2d 855 (1978) (benefits of partial performance by building 5.4 miles of roads should be offset from the amount of restitution), the government's proposal that the purported loss in value of the leases is such a "benefit" was explicitly rejected by the Court, which ruled that the law entitles the companies to ... restitution whether the contracts would, or would not, ultimately have produced a financial gain or led them to obtain a definite right to explore.

*Mobil*, 120 S.Ct. at 2437.

The Court of Federal Claims awarded $78,242,368.59 to Marathon, which was the

bonus payment less a stipulated amount of $12,848.41. The court awarded $78,257,565.00 to Mobil. The calculation of these amounts is not in dispute, other than as to the rejected theory of offset for loss in lease value.[3] The judgments of the Court of Federal Claims are affirmed.

*AFFIRMED.*

---

**3.** The Court of Federal Claims held that the companies were not entitled to recovery of the annual rental payments; this ruling was not appealed.