**MARATHON OIL COMPANY and Mobile Oil Exploration & Producing Southeast, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–5147.

United States Court of Appeals, Federal Circuit.

DECIDED: June 30, 2004.

Brian T. Fitzpatrick, Sidley Austin Brown & Wood LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Griffith L. Green.

Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief was Carolyn D. Talley, Senior Attorney, United States Department of the Treasury, Financial Management Service, of Washington, DC.

Before CLEVENGER, GAJARSA, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER. Dissenting opinion filed by Circuit Judge PROST.

CLEVENGER, Circuit Judge.

Marathon Oil Company and Mobil Oil Exploration and Producing Southeast, Inc. (collectively "the Oil Companies") brought a breach of contract claim against the United States in the Court of Federal Claims. After appeal to the Federal Circuit and to the Supreme Court, they prevailed, and the Federal Circuit entered judgment in their favor on remand. *Marathon Oil Co. v. United States*, 236 F.3d 1313, 1315–16 (Fed.Cir.2000) (*"Contract Judgment"*).

The Oil Companies demanded post-judgment interest on the Federal Circuit contract judgment. When the government refused to pay, the Oil Companies brought a new claim alleging that they were entitled to the interest under 28 U.S.C. § 1961(c)(2). The Court of Federal Claims dismissed their complaint. *Marathon Oil Co. v. United States*, 56 Fed.Cl. 768 (2003) (*"Interest Opinion"*). We affirm the judgment of the Court of Federal Claims dismissing the Oil Companies' claim for post-judgment interest. We hold that the Oil Companies have not demonstrated a waiver of sovereign immunity for post-judgment interest on final judgments against the United States in the Federal Circuit that unambiguously extends to encompass their contract judgment.

I

In 1981, the Oil Companies purchased interests in oil and gas leases from the United States. In 1990, new federal legislation impacted the Oil Companies' rights under the lease contracts. The Oil Companies sued for breach of contract in the Court of Federal Claims and won, receiving judgments in the amount of over $78 million each. *Conoco, Inc. v. United States*, 35 Fed. Cl. 309 (1996). On appeal, we reversed, *Marathon Oil Co. v. United States*, 177 F.3d 1331 (Fed.Cir.1999), but the Supreme Court granted certiorari and reversed again, *Marathon Oil Co. v. United States*, 528 U.S. 1002, 120 S.Ct. 494, 145 L.Ed.2d 381 (1999), holding that the government had breached its contracts with the Oil Companies. On December 28, 2000, we rejected an argument by the government on remand that the damages award should be reduced, and we affirmed the initial judgments of the Court of Federal Claims. *Contract Judgment*, 236 F.3d

at 1315–16. The mandate issued on February 23, 2001, and the government did not seek review in the Supreme Court. On February 28, 2001, the Court of Federal Claims reinstated its initial judgments in favor of the Oil Companies, and on May 1, 2001, the government paid the amounts specified in the judgments to the Oil Companies.

The amounts paid, however, did not include post-judgment interest on the Federal Circuit contract judgment. The Oil Companies made a demand to the Department of the Treasury for this interest, but the demand was rejected. The Oil Companies next filed this lawsuit seeking post-judgment interest for the period from December 28, 2000—the date of the Federal Circuit's contract judgment on remand from the Supreme Court—through May 1, 2001—the date on which the government paid the contract judgment. In the Court of Federal Claims, the Oil Companies argued that 28 U.S.C. § 1961(c)(2) waives the government's sovereign immunity from a claim for post-judgment interest on the contract judgment because the statute requires the government to pay post-judgment interest on "all final judgments against the United States in the United States Court of Appeals for the Federal [C]ircuit." 28 U.S.C. § 1961(c)(2) (2000).

The Court of Federal Claims rejected the Oil Companies' arguments and dismissed their complaint. *Interest Opinion,* 56 Fed.Cl. at 776. The court stated two reasons why section 1961(c)(2) did not waive sovereign immunity for post-judgment interest on the Oil Companies' contract judgment. First, the court held that "the plaintiffs received their awards ... pursuant to final judgments of the Court of Federal Claims, not the U.S. Court of Appeals for the Federal Circuit." *Id.* at 773. Therefore, the " 'judgment' of the Federal Circuit on December 28, 2000 was not a 'final judgment' within the contemplation of 28 U.S.C. § 1961(c)(2)...." *Id.* Second, the court held that, even assuming the Federal Circuit judgment to be a "final judgment" for the purposes of section 1961(c)(2), the waiver of sovereign immunity for post-judgment interest on some Federal Circuit judgments that is embodied in section 1961(c)(2) did not unambiguously encompass interest on the Oil Companies' contract judgment. *Id.* at 773–75.

The Oil Companies timely appealed the Court of Federal Claims judgment to us, and we have jurisdiction to hear the appeal under 28 U.S.C. § 1295(a)(3).

## II

█ This appeal turns on the proper interpretation of a "final judgment" as the term is used in 28 U.S.C. § 1961(c)(2), and on the scope of the waiver of sovereign immunity effected by that statute. This court reviews without deference both issues of statutory construction, *Ainslie v. United States,* 355 F.3d 1371, 1373 (Fed. Cir.2004), and issues of sovereign immunity, *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1370 (Fed.Cir.2001).

█ "As sovereign, the United States, in the absence of its consent, is immune from suit." *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (citing *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Guided by "the historical view that interest is an element of damages separate from damages on the substantive claim," *id.* at 314, 106 S.Ct. 2957, the rule of sovereign immunity not only extends to create governmental immunity from an interest award, it does so in the guise of the "no-interest rule," requiring consent to liability for interest on a damage award to be "affirmatively and separately contemplated by Congress," *id.* at 315, 106 S.Ct. 2957. Thus, the waiver

for sovereign immunity for interest must be distinct from a general waiver of immunity for the cause of action resulting in the damages award against the United States. *See id.* at 316, 106 S.Ct. 2957 (affirming that "federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result"); *Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 798 (Fed.Cir.1993) ("Interest may not be recovered against the government in the absence of an explicit waiver of sovereign immunity for that purpose."). The no-interest rule applies to claims for post-judgment interest. *See, e.g., United States v. N.Y. Rayon Imp. Co.,* 329 U.S. 654, 661, 67 S.Ct. 601, 91 L.Ed. 577 (1947) (noting that the no-interest rule includes claims for interest "arising out of pre-existing judgments").

 Well established rules of statutory construction frame a court's analysis of whether Congress has waived sovereign immunity in a statute or statutory scheme, and they tilt the interpretive playing field in favor of the government's immunity. "In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign, and not enlarge the waiver 'beyond what the language requires.'" *Shaw,* 478 U.S. at 318, 106 S.Ct. 2957 (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (quoting *E. Transp. Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927)) (citation omitted)). A waiver of sovereign immunity "must be unequivocally expressed," or a court must infer that Congress did not intend to create a waiver. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)); *see also Unit-*

*ed States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); *United States v. Nordic Vill., Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Kalan, Inc. v. United States,* 944 F.2d 847, 849–50 (Fed.Cir. 1991). If a statute is susceptible to a plausible reading under which sovereign immunity is not waived, the statute fails to establish an unambiguous waiver and sovereign immunity therefore remains intact. *See Nordic Vill.,* 503 U.S. at 37, 112 S.Ct. 1011.

With respect to waiver of sovereign immunity for interest on damage awards against the United States, "[t]he no-interest rule provides an added gloss of strictness upon these usual rules." *Shaw,* 478 U.S. at 318, 106 S.Ct. 2957. To conclude that a statute waives sovereign immunity for interest:

> [T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*Id.* (quoting *N.Y. Rayon Imp.,* 329 U.S. at 659, 67 S.Ct. 601) (alteration in original).

### III

The Oil Companies contend on appeal that 28 U.S.C. § 1961(c)(2) demonstrates that Congress has waived sovereign immunity for post-judgment interest on their contract judgment. The Court of Federal Claims provided two grounds to support its conclusion that the Oil Companies' contention is incorrect. We examine each in turn.

## A

■ The Court of Federal Claims erred in holding that the December 28, 2000 judgment was not a "final judgment[ ] . . . in the United States Court of Appeals for the Federal Circuit" as envisioned by 28 U.S.C. § 1961(c)(2). Although it is true, as the Court of Federal Claims noted, that "the language of the Federal Circuit's opinion and judgment . . . clearly state[s] that the court was affirming the prior judgments of the Court of Federal Claims," *Interest Opinion,* 56 Fed.Cl. at 771, the legal accuracy of a trial court's judgment is not determinative of the status of the judgment of a court of appeals as a final judgment of that court. A final judgment is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment." *Black's Law Dictionary* 847 (7th ed.1999); *cf. Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945) (holding that in the context of appellate jurisdiction a 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment). Our December 28, 2000 judgment was, temporally, our last action in the Oil Companies' suit for breach of contract, and it did not remand any substantive disputes on liability or on damages for resolution in the Court of Federal Claims. *Cf. Williams v. Principi,* 275 F.3d 1361, 1364 (Fed.Cir.2002) (noting that a remand is generally not a final judgment). It was, therefore, a final judgment of this court for the purposes of section 1961(c)(2).

## B

■ Given that the December 28, 2000 judgment was a final judgment of the Federal Circuit under section 1961(c)(2), we must consider whether section 1961(c)(2) unambiguously waives sovereign immunity for post-judgment interest on "all" judgments of the Federal Circuit as the Oil Companies posit it does.

### 1

Section 1961(c)(2) cannot be read in isolation. Its express language triggers a chain of cross-references that links four distinct statutory provisions.

Section 1961, in its entirety, provides as follows:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986.

(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal [C]ircuit, at the rate provided in subsection (a) and as provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law.

(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

28 U.S.C. § 1961 (2000 & Supp. III 2003).

As relevant to this appeal, section 1961(c)(2) provides that "interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal [C]ircuit ... as provided in subsection (b),"[1] id. § 1961(c)(2), and section 1961(b) states that "[i]nterest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually," id. 1961(b). Section 2516(b), in turn, provides that: "[i]nterest on a judgment against the United States affirmed by the Supreme Court after review on petition of the United States is paid at" the same rate specified in 28 U.S.C. § 1961(a). *Id.* § 2516(b).

Finally, chapter 13 of title 31, entitled "Appropriations," contains 31 U.S.C. § 1304, commonly known as the Judgment Fund statute, which, according to its title, creates an appropriation for "Judgments, awards, and compromise settlements." Section 1304(b), the only subsection of sec-

tion 1304 referenced in 28 U.S.C. § 1961(b), provides as follows:

(1) Interest may be paid from the appropriation made by this section—

(A) on a judgment of a district court, only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance; or

(B) *on a judgment of the Court of Appeals for the Federal Circuit* or the United States Court of Federal Claims *under section 2516(b) of title 28, only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance.*

(2) Interest payable under this subsection in a proceeding reviewed by the Supreme Court is not allowed after the end of the term in which the judgment is affirmed.

31 U.S.C. § 1304(b) (2000) (emphases added).

2

The Oil Companies' argument is straightforward. The Oil Companies argue that, under the plain language of section 1961(c)(2), Congress has unambiguously waived sovereign immunity for "all final judgments against the United States in the United States Court of Appeals for the Federal [C]ircuit." All means all, they say, and all includes their contract judgment.

---

**1.** The reference to subsection (c)(1) in section 1961(c)(2) applies only to tax cases and is not germane to the Oil Companies' argument. The reference to subsection (a) only determines the rate at which interest is calculated, and that rate is not in contention in this appeal.

The Oil Companies recognize that section 1961(c)(2) provides for interest on judgments only "as provided in subsection (b)," but they contend that subsection (b) supports, rather than detracts from, their argument. Subsection (b) formulates a general rule for calculating interest and identifying the time period during which interest accrues: [I]nterest shall be computed daily to the date of payment.... 28 U.S.C.1961(b). This general rule applies except as provided in section 2516(b) of this title and section 1304(b) of title 31. Id. According to the Oil Companies, these two sections merely place different constraints on the computation of interest. They permit interest only on a particular subset of judgments against the United States—those judgments "against the United States affirmed by the Supreme Court after review on petition of the United States." 28 U.S.C. 2516(b); see also 31 U.S.C. 1304(b)(1)(B) (addressing only interest "on a judgment of the Court of Appeals for the Federal Circuit ... under section 2516(b) of title 28"). With respect to these particular judgments against the United States, the two statutes define a window during which interest is available that is different from the one specified in section 1961(b), stating that interest is to be computed "only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance." 31 U.S.C. 1304(b)(1)(B).

According to the Oil Companies' theory, neither section 1961(b) nor the two statutes it references negate the government's liability for interest on all Federal Circuit judgments established in section 1961(c)(2) because these statutes address only the secondary, technical issue of how to compute the required interest. Furthermore, the Oil Companies contend that the interest owed on their contract judgment is unaffected by 28 U.S.C. § 2516(b) or 31 U.S.C. § 1304(b). These sections are only relevant to the limited set of judgments expressly delineated therein—that is, to judgments "affirmed by the Supreme Court after review on petition of the United States." For all judgments against the United States that the United States does not unsuccessfully appeal to the Supreme Court, the Oil Companies insist that the provisions in 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b)(1)(B) do not impact the existence or the scope of the government's waiver of sovereign immunity as established in section 1961.

In summary, the Oil Companies contend (1) that section 1961(c)(2) provides a rule that is applicable to all (meaning *all* ) judgments of the Federal Circuit, and (2) that 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b) merely list particular circumstances not relevant to this appeal under which interest on judgments of the Federal Circuit against the United States is computed according to a rule other than the one specified in section 1961(b). Because the United States did not petition the Supreme Court for review of the Oil Companies' contract judgment, the Oil Companies argue that the exceptions do not affect their right to post-judgment interest, and they seek interest running from the date the judgment was entered to the date the judgment was paid as provided in section 1961(b).

Viewing this argument from a historical perspective, the Oil Companies propose that the Federal Courts Improvement Act of 1982 ("FCIA"), Pub.L. No. 97–164, 96 Stat. 25 (1982), which created this court and enacted subsections (b) and (c)(2) of 28 U.S.C. § 1961, left the pre–1982 waiver of sovereign immunity for post-judgment interest intact for all of the judgments that it had historically encompassed, but created a new—and broader—waiver for interest on all other judgments for which sover-

eign immunity had never before been waived.

Prior to the enactment of FCIA, 31 U.S.C. § 724a contained language similar to the post-FCIA language now found in 31 U.S.C. § 1304(b). Section 724a, entitled "Appropriations for payment of judgments ... against the United States," stated that "whenever a judgment rendered by the Court of Claims [now the Court of Appeals for the Federal Circuit] is payable from this appropriation, interest payable thereon in accordance with section 2516(b) of title 28 shall be computed from the date of the filing of the transcript thereof in the General Accounting Office." 31 U.S.C. § 724a (1976). Prior to 1982, 28 U.S.C. § 2516(b) provided, as it does today, for interest on judgments "against the United States affirmed by the Supreme Court after review on petition of the United States." 28 U.S.C. § 2516(b) (1976). Before the FCIA, these two statutes were the only statutes addressing post-judgment interest on judgments of the Court of Claims, and they were held to waive sovereign immunity "for post-judgment interest only during the period that [the government] appealed its adverse judgment to the Supreme Court." *Thompson v. Kennickell*, 797 F.2d 1015, 1018 (D.C.Cir.1986). We find no cases suggesting that prior to 1982 the government paid post-judgment interest on Court of Claims judgments against the United States that the United States did not seek to have reviewed in the Supreme Court.

Thus, for judgments of the Federal Circuit against the United States reviewed by the Supreme Court on the government's request and affirmed, the Oil Companies suggest that the pre- and post-FCIA waiver of sovereign immunity is identical and that the waiver is "for post-judgment interest only during the period that [the government] appealed its adverse judgment to the Supreme Court." *Id.* The Oil Companies contend, however, that while this figure has remained constant, the FCIA shifted the ground from black to white. The Oil Companies argue that subsections (c)(2) and (b) of section 1961 now not only waive sovereign immunity for post-judgment interest on all judgments against the United States that the government chooses not to appeal to the Supreme Court—judgments that were previously entirely beyond the scope of the waiver of sovereign immunity for post-judgment interest—but also that they waive sovereign immunity for interest on such judgments from the date of the judgment until the date of payment—a time period potentially longer than is permitted for appealed judgments.

Needless to say, the government views the effect of the statutory scheme on sovereign immunity from liability for post-judgment interest differently. It argues that the pre-FCIA regime remains in force today unaltered by the enactment of subsections (c)(2) and (b) of section 1961. It argues that the relevant statutes are clear on their face, waiving immunity only narrowly as in the past, and that, at best, the Oil Companies have demonstrated an ambiguity in the statutory scheme that by law precludes a waiver of sovereign immunity.[2]

2. The government also argues that we are bound by our previous decision in *Zumerling v. Marsh*, 783 F.2d 1032, 1036 n. 12 (Fed.Cir. 1986), to hold that sovereign immunity has been waived only for final judgments of the Federal Circuit affirmed by the Supreme Court. We disagree. In *Zumerling,* we stated that "[s]ection 2516(b) is only applicable ... to 'judgment[s] against the United States affirmed by the Supreme Court after review on petition of the United States.' " *Id.* As previously noted, this statement is uncontroversial, and it is not contested by the parties in this appeal. In *Zumerling,* we did not address whether sovereign immunity has been waived

We conclude that the Oil Companies have not demonstrated an unequivocal or unambiguous waiver of sovereign immunity for post-judgment interest on their contract judgment. The interaction of sections 1961(c)(2) and (b), on the one hand, and sections 2516(b) and 1304(b), on the other hand, is subject to plausible readings under which Congress has not waived sovereign immunity for post-judgment interest on judgments of the Federal Circuit against the United States that the United States does not seek to have reviewed in the Supreme Court.

In the end, the legal choice is simple and self-evident. Either the relevant statute could mean that all final judgments of the Federal Circuit carry post-judgment interest, or it could mean that all final judgments as provided in the relevant statutes, less than the global universe of "all final judgments," carry such interest. Given the legal test to be administered to the statutes at hand, and the statutes themselves as discussed below, there can be no doubt that Congress has not unequivocally excluded the narrower reading of the relevant statutes. Given the fact that Congress never before had even contemplated waiving sovereign immunity for post-judgment interest on *all* final judgments of a court of appeals, the notion that it has done so for the Federal Circuit with nary a word of legislative history to support such a sweeping change strikes us as nearly beyond comprehension.

### 3

Section 1961(b) establishes a general rule for interest calculation "except as provided in section 2516(b) of this title and section 1304(b) of title 31." 28 U.S.C. § 1961(b). On its face, it is susceptible to both a reading favoring the Oil Companies and a reading favoring the government.

As discussed above, the Oil Companies suggest one reading: The exception in section 1961(b) should be read to mean "except as provided [for the specific set of judgments listed] in section 2516(b) . . . and section 1304(b)," namely except when the judgment against the United States is "affirmed by the Supreme Court after review on petition of the United States," 28 U.S.C. § 2516(b).

However, a second plausible reading exists as well. The reference to sections 2516(b) of title 28 and 1304(b) of title 31 is a citation to all of the relevant provisions in the United States code that deal directly with post-judgment interest on judgments against the government,[3] so the reference to these statutes in section 1961(b) can be read to refer to all judgments against the government. According to this reading, the exception in section 1961(b) should be read to mean "except as provided [for the general class of judgments addressed] in section 2516(b) . . . and section 1304(b)," namely except when the judgment is against the government.

Under this second reading, there is no waiver of sovereign immunity for post-judgment interest on a judgment like the Oil Companies' contract judgment that the government does not seek, unsuccessfully, to have reviewed in the Supreme Court. Interest on such a judgment is withdrawn from the scope of the general rule in section 1961(b) because the judgment is against the government, but does not fall within the scope of the interest provisions of 28 U.S.C. § 2516(b) and/or 31 U.S.C. § 1304(b) because the judgment does not

---

for judgments that do not fall within the ambit of section 2516(b).

**3.** Other interest provisions exist for judgments not controlled by section 1961(b). *See, e.g.,* 28 U.S.C. § 1961(c)(1).

satisfy the criteria therein stated. In sum, under this reading, Congress has not created a rule for computing interest on such a judgment, so Congress has not waived immunity for interest on such a judgment.

The Oil Companies argue that the second reading is not a plausible reading because it renders section 1961(c)(2) superfluous by making sections 2516(b) and 1304(b) determinative of the outcome in all cases seeking post-judgment interest on judgments of the Federal Circuit. In the context of section 1961 as a whole, we conclude that some redundancy in statutory provisions is insufficient to transform a plausible reading into an implausible one. Several provisions of section 1961(c) are replete with redundancy, and section 1961(c) is thus more easily read as providing an overview intended to emphasize and to cross-reference rather than as codifying law not provided for elsewhere. For example, subsection (c)(3) states that: "Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law." 28 U.S.C. § 1961(c)(3). Court of Federal Claims judgments are mentioned nowhere else in section 1961; subsection (1), which provides the rule for internal revenue tax cases, would presumably apply to internal revenue tax cases in the Court of Federal Claims without the aid of subsection (c)(3); "other provision[s] of law" would also presumably apply to Court of Federal Claim judgments without the benefit of subsection (c)(3). Likewise, subsection (4) states that: "This section shall not be construed to affect the interest on any judgment of any court not specified in this section." *Id.* § 1961(c)(4). Presumably, this provision is redundant in light of ordinary plain-meaning principles of statutory interpretation, and strict-construction principles of

sovereign immunity, and was added by Congress for emphasis.

In summary, the reading of the "except as provided in" language of section 1961(b) under which Congress did not waive sovereign immunity for post-judgment interest on the Oil Companies' contract judgment is a plausible reading, and the existence of a plausible reading under which Congress has not waived sovereign immunity means that we are obliged to conclude from the plain language of the statute that Congress did not intend to waive sovereign immunity. *See Nordic Vill.,* 503 U.S. at 37, 112 S.Ct. 1011 (noting that sovereign immunity was not waived because the readings of a statute that did not waive sovereign immunity were, although "assuredly not the only readings," plausible readings).

### 4

Another argument suggests to us as well that, despite the presence of the word "all" in section 1961(c)(2), Congress has not unequivocally waived sovereign immunity for interest on judgments of the Federal Circuit against the United States unless the criteria listed in 31 U.S.C. § 1304(b) are satisfied. There can be no unequivocal waiver of sovereign immunity for post-judgment interest on a broad array of judgments of this court if Congress has not clearly appropriated funds with which the government can pay the interest.

### i

■ Under the Appropriations Clause of the Constitution, funds from the Treasury cannot be used for purposes other than those permitted by the appropriating statute. *See Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("Money may be paid out [of the Federal Treasury] only through an appropriation made by law; in

other words, the payment of money from the Treasury must be authorized by a statute."); *id.* at 432, 110 S.Ct. 2465 ("The general appropriation for payment of judgments ... does not create an all-purpose fund for judicial disbursement.... Rather, funds may be paid out only on the basis of a judgment based on a substantive right to compensation based on the express terms of a specific statute."). The congressional appropriation that creates the Judgment Fund, from which the government pays interest on all judgments "not otherwise provided for," 31 U.S.C. § 1304(a)(1), thus can only be dispensed in accordance with the terms of section 1304. In light of these strict rules governing the expenditure of the Treasury's funds, it is plausible to construe the role of section 1304(b) in the concatenation of statutes at issue in this appeal as more important than merely explaining the method of computing post-judgment interest for the narrow subset of judgments against the United States that the Oil Companies argue are excepted from section 1961(b). It is plausible to conclude that the scope of the appropriation in section 1304(b) is jurisdictional in nature, and that the government has waived sovereign immunity—and thus is liable—only for the interest specified therein. Under this reading, Congress intended to waive sovereign immunity only for interest payments that satisfy the conditions of section 1304(b) because Congress has appropriated funds to pay interest only under those conditions. Inversely, Congress did not intend to waive sovereign immunity for interest payments for which Congress has provided no funds.

As discussed above, the Oil Companies' claim for interest on their contract judg-ment does not satisfy the conditions of section 1304(b), so to the extent that the statutory restrictions on dispersal of funds from the Judgment Fund to pay interest on judgments are jurisdictional, the Oil Companies' claim must fail. The Oil Companies failed to counter the proposition that section 1304 is the only potential existing source of funding for the post-judgment interest that they seek and that Congress has not provided for payment of the interest allegedly authorized by section 1961(c)(2) elsewhere.[4] Section 1304(b)(1)(B) permits payment of interest from the Judgment Fund appropriation created by section 1304 only on final judgments of the Federal Circuit against the United States that the United States unsuccessfully appeals to the Supreme Court. *See* 31 U.S.C. § 1304(b)(1)(B) (concerning only judgments "of the Court of Appeals for the Federal Circuit ... under section 2516(b) of title 28"); 28 U.S.C. § 2516(b) (pertaining only to judgments "against the United States affirmed by the Supreme Court after review on petition of the United States"). The government did not petition for review of the Oil Companies' contract judgment, so Congress has not expressly appropriated funds in section 1304(b)(1)(B) to pay interest on judgments such as the Oil Companies' contract judgment. No other subsection of 1304(b) permits payment of the sought-after interest either. *See* 31 U.S.C. § 1304(b)(1)(A) (addressing interest "on a judgment of a district court"); *id.* § 1304(b)(2) (placing an additional limitation on interest otherwise payable under subsection (b)(1)).

Returning to the language of section 1961(c)(2), whether the word "all" claims a

---

4. At oral argument, the Oil Companies did propose that subsection (a) of section 1304 provides an appropriation unlimited by the restrictions of subsection (b) that could be used to satisfy their claim for post-judgment interest. This argument is addressed, and dismissed, in Section III.B.4.iii, *infra.*

universe that includes a subset of final judgments for which certiorari is successfully taken, or whether Congress meant "all" to mean all of those cases for which it clearly has provided a source of funding in section 1304 but not another category of final judgments for which Congress has provided no funding, is ambiguous. However, construing the interest-related provisions of the Judgment Fund in section 1304(b) as limitations on the government's waiver of sovereign immunity, we would be required to find ambiguity in the overall statutory scheme even if the language of subsections (c)(2) and (b) of section 1961 were, hypothetically, crystal clear when read in isolation from the Judgment Fund statute.

ii

The reasonableness of concluding that the contours of section 1304(b)(1) determine the liability of the United States for post-judgment interest is supported by the pronouncements of other courts on the jurisdictional nature of section 1304(b)(1). In *Transco Leasing Corp. v. United States*, 992 F.2d 552, 554–55 (5th Cir.1993), the Fifth Circuit interpreted section 1304(b)(1)(A), the statute controlling access to the Judgment Fund for the government to pay interest on judgments of the district courts, as determinative of the scope of Congress's waiver of sovereign immunity:

> Section 1961[ (b) ] restricts the liability of the United States for postjudgment interest to amounts funded in section 1304. Section 1304(b), then, acts as more than an appropriation statute, it limits the *liability* of the United States for postjudgment interest, by limiting the waiver of sovereign immunity to the time periods it specifies. Accordingly, we reject appellees' contention that section 1304 is not controlling because it is an appropriation statute which deter-

mines which judgments and amounts the United States will pay, but does not determine whether or not the United States is liable for a particular judgment or award of interest.

*Transco Leasing*, 992 F.2d at 555 (citations omitted); *see also Bhargava v. Veneman*, 143 F.Supp.2d 16, 18 (D.D.C.2001) (construing 31 U.S.C. § 1304(b)(1)(A) as a waiver of sovereign immunity that determines the conditions under which interest on district court judgments may be awarded against the United States); *Moyer v. United States*, 612 F.Supp. 239, 241 (D.Nev.1985) (same).

We are aware of two cases from sister circuits that have held that a different aspect of the Judgment Fund statute—the incorporation of 28 U.S.C. § 2414 in section 1304(a)(3)(A)—is not "a superseding limitation on the government's waiver of sovereign immunity." *Rosenfeld v. United States*, 859 F.2d 717, 725–27 (9th Cir.1988); *see also Trout v. Garrett*, 891 F.2d 332, 334–35 (D.C.Cir.1989). In relevant part, section 1304(a) provides that:

> (a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when—
>
> > (1)payment is not otherwise provided for;
> >
> > (2) payment is certified by the Secretary of the Treasury; and
> >
> > (3) the judgment, award, or settlement is payable—
> >
> > > (A) under section 2414 ... of title 28....

31 U.S.C. § 1304(a). Section 2414 provides for "payment of final judgments rendered by a district court ... against the United States." 28 U.S.C. § 2414 (2000).

In *Trout*, the district court granted the Title VII plaintiffs' claim for interim attorney fees; the government conceded that Congress had waived sovereign immunity for such a claim, *see* 891 F.2d at 334 (relying on the Title VII provision codified in 42 U.S.C. § 2000e–5(k) that provides "the United States shall be liable for costs the same as a private person"); and the court characterized the government's concession as an acknowledgement of a "well-accepted" legal proposition, *id.* The government insisted, however, that sovereign immunity for immediate payment of this interim attorney fees award had not been waived because limitations on the dispersal of funds from the Judgment Fund prevented the government from paying the award until the end of the litigation produced a final, not an interim, judgment. The government's argument relied on the language in section 1304(a)(3)(A) permitting payment from the judgment fund for judgments "under section 2414," and section 2414's provision solely for the "payment of final judgments." The court ruled against the government, however, concluding that the language in section 2414 incorporated by reference into the Judgment Fund statute was not designed "to retract or limit duly enacted waivers of sovereign immunity." *Id.* at 335; *see also Rosenfeld,* 859 F.2d at 726 ("Since Congress waived sovereign immunity from attorney's fees in the FOIA actions . . . no additional waiver is required [in the Judgment Fund statute] for interim fees.").

We express no opinion on whether the waiver of sovereign immunity from interim attorney fees in these cases was truly "unequivocally expressed," *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349, but we conclude that the discussion of 28 U.S.C. § 2414 in *Rosenfeld* and *Trout* does not render implausible our interpretation of the role that 31 U.S.C. § 1304(b)(1) plays in maintaining and waiving sovereign immunity for inter-

est on Federal Circuit judgments against the United States. The courts in both *Trout* and *Rosenfeld* relied on the fact that self-contained waivers of sovereign immunity existed in Title VII and the FOIA, statutes completely unconnected to the Judgment Fund statute. In contrast, the alleged waiver of sovereign immunity in section 1961(c)(2) on which the Oil Companies rely in the instant case includes a reference, via section 1961(b), to the very limitations in section 1304(b)(1)(B) at issue. Whereas the court in *Trout* began its analysis of the Judgment Fund statute by reaffirming the "well-accepted" proposition that "sovereign immunity does not bar a *claim* by a Title VII plaintiff for interim fees against the government," 891 F.2d at 334, we must consider the reference to the Judgment Fund statute in section 1961(b) in the first instance to determine whether a claim for interest by a party granted a final judgment by the Federal Circuit is barred by sovereign immunity.

Additionally, the sovereign immunity inquiry is different for the Judgment Fund provision in section 1304(a), addressed in *Trout* and *Rosenfeld,* and the Judgment Fund provision in section 1304(b) at issue here. The interest-specific provisions in subsection (b) are subject to the "no-interest rule" and thus to an "added gloss of strictness" on the traditional sovereign immunity analysis. *Shaw,* 478 U.S. at 318, 106 S.Ct. 2957.

Finally, we note that *Rosenfeld* relied on the fact that "when a court has rejected the Judgment Fund argument [casting section 1304 as a waiver of sovereign immunity], the government has managed to pay the interim fee award." 859 F.2d at 727. For evidence of this fact, *Rosenfeld* cited *Jurgens v. EEOC,* 660 F.Supp. 1097 (N.D.Tex.1987), which states:

In both this case and *Shafer[ v. Commander, Army & Air Force Exchange Service,* No. CA 3–76–1246–R, 1985 WL 9492 (N.D.Tex. Dec. 3, 1985)], the defendants argued that they could not pay the interim awards due to the restrictions of [31 U.S.C. § 1304] and [28 U.S.C. § 2414]. When faced with a citation for contempt of court, however, the defendants in *Shafer* made immediate payment. The court believes that the EEOC can also arrange for immediate payment of this court's interim award. *Jurgens,* 660 F.Supp. at 1102. However, the Supreme Court has stated that:

> [I]t would be most anomalous for a judicial order to require a Government official ... to make an extrastatutory payment of federal funds. It is a federal crime, punishable by fine and imprisonment, for any Government officer or employee to knowingly spend money in excess of that appropriated by Congress.

*Richmond,* 496 U.S. at 430, 110 S.Ct. 2465. Here, where the Oil Companies cannot suggest an appropriate statutory appropriation of funds with which interest on their $156 million contract judgments could be paid, we decline to infer that Congress intended to waive sovereign immunity for post-judgment interest when payment could only occur extrastatutorily.

As with the core ambiguity in section 1961(c)(2), we thus conclude that it is plausible to read section 1304(b)(1)(B) to likewise "determine whether or not the United States is liable for a particular judgment or award of [post-judgment] interest." *Transco Leasing,* 992 F.2d at 555.

#### iii

Requested at oral argument to identify a statute authorizing the appropriation of funds from which interest on their contract judgment could be paid, as interest cannot be paid under the terms of section 1304(b)(1), the Oil Companies were quick to suggest section 1304(a). The Oil Companies argue that the interest on "all final judgments against the United States in the United States Court of Appeals for the Federal [C]ircuit" described in section 1961(c)(2) is interest ... otherwise authorized by law as provided for in section 1304(a), and that section 1304(a) by its own force therefore appropriates the "[n]ecessary amounts" to pay their sought-after interest. Even assuming that the interest mentioned in section 1961(c)(2) is "interest ... otherwise authorized by law," however, this argument fails.

Section 1304(a) authorizes payment from the Judgment Fund only when the judgment is payable under one of the statutes listed in subsection (a)(3), as the numbered subsections of the statute are written in the conjunctive. In full, section 1304(a)(3) authorizes the appropriation of funds "when ... the judgment, award, or settlement is payable—"

> (A) under section 2414, 2517, 2672, or 2677 of title 28;
>
> (B) under section 3723 of this title;
>
> (C) under a decision of a board of contract appeals; or
>
> (D) in excess of an amount payable from the appropriations of an agency for a meritorious claim under section 2733 or 2734 of title 10, section 715 of title 32, or section 203 of the National Aeronautics and Space Act of 1958 (42 U.S.C. 2473).

31 U.S.C. § 1304(a)(3). None of the listed statutes authorize the payment of a judgment of the Federal Circuit. Thus, to the extent that the Oil Companies seek payment of interest based on their contract judgment obtained in this court, section 1304(a) does not aid their cause.

The Oil Companies could argue, however, that the judgment for which they seek payment from the Judgment Fund is the

Court of Federal Claims judgment that they would receive if they were to prevail on this appeal. Subsection (a)(3)(A) provides for payment from the Judgment Fund of judgments payable under 28 U.S.C. § 2517, which in turn authorizes the payment of "every final judgment rendered by the United States Court of Federal Claims against the United States," 28 U.S.C. § 2517(a) (2000). A construction of section 1304(a) permitting payment from the Judgment Fund under this theory is tenuous, as it would require two different portions of section 1304(a) to refer to two different judgments: the interest ... otherwise authorized by law in subsection (a) would refer to interest on the Oil Companies' Federal Circuit contract judgment, and the judgment payable under section 2517 in subsection (a)(3)(A) would refer to the Court of Federal Claims judgment sought in this appeal. Nonetheless, even accepting this construction of section 1304(a), the Oil Companies' argument fails to demonstrate an unambiguous waiver of sovereign immunity. Subsection (a) of section 1304 is clearly not independent of subsection (b)(1), and subsection (b)(1) is plausibly read to limit the post-judgment interest payable under subsection (a).

This line of analysis requires us to confront the language in section 1304(b)(1) which states that "[i]nterest may be paid from the appropriation made by this section," namely section 1304 or the Judgment Fund as a whole. 31 U.S.C. 1304(b)(1) (emphasis added). If the "may" language in subsection (b)(1) is simply permissive, allowing not only the conditions in (a) and (b) but other conditions as well to warrant payment from the Judgment Fund, the Oil Companies could navigate the interstices of section 1304 with success. But the matter is not so simple, as the word "may" in some contexts is not permissive but indeed is interpreted as restrictive in nature.[5] See, e.g., *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 197–204, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) (resolving the ambiguity between permissive and restrictive interpretations of the word "may" in the venue provisions of the Federal Arbitration Act (FAA)); *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 38, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977) (noting that it is "settled" that the word "may" in 12 U.S.C. § 94 means "may ... only" in the restrictive sense of the word). Whereas a permissive reading of may would make subsection (b)(1) an enumeration of conditions sufficient for the payment of post-judgment interest, a restrictive reading of may would transform subsection (b)(1) into a list of conditions necessary for the payment of post-judgment interest. Without doubt, if the may in subsection (b)(1) were to be restrictive, then the provisions of subsection (b)(1)(B) would clearly prohibit the payment of interest on the Oil Companies' final contract judgment of this court in this particular case. Thus, for the Oil Companies to succeed, the permissive reading must be unequivocally the proper

---

5. A distinct dimension of ambiguity sometimes lodged in the word "may" is the distinction between discretion and duty, or the possibility that "may" means "must." *See, e.g., United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, ... and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." (citations and footnote omitted)); *United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 359, 15 S.Ct. 378, 39 L.Ed. 450 (1895) ("It is familiar doctrine that, where a statute confers a power to be exercised for the benefit of the public or of a private person, the word 'may' is often treated as imposing a duty, rather than conferring a discretion.").

reading. We decline to reach this conclusion.

In *Cortez Byrd Chips*, the Supreme Court interpreted the meaning of the word "may" in three related venue provisions of the FAA, including section 9 that provides that, to confirm an arbitration award, "application may be made to the United States court in and for the district within which such award was made." 529 U.S. at 197, 120 S.Ct. 1331 (quoting 9 U.S.C. 9). One party argued that the statute was permissive in that it liberalized venue by adding another district in which confirmation could occur; the other party countered that the statute was restrictive in that it required confirmation to occur in the specified district. The Court expressly declined to resolve this issue based on the plain meaning of the statute:

> Enlightenment will not come merely from parsing the language, which is less clear then either party contends. Although "may" could be read as permissive in each section ... the mere use of "may" is not necessarily conclusive of congressional intent to provide for permissive or discretionary authority.... Each party has a point, but neither point is conclusive.

*Id.* at 198–99, 120 S.Ct. 1331. Instead, the Court examined the statutory history and animating policy of the venue provisions of the FAA and determined that "may" was used in the permissive sense. *Id.* at 199–204, 120 S.Ct. 1331.

We find the Court's reasoning in Cortez Byrd Chips both persuasive and decisive. Even if read in the light most favorable to the Oil Companies, the plain language of the "may" provision in section 1304(b)(1) is not unequivocally permissive language. Rather, it is ambiguous, and an ambiguous statute cannot waive sovereign immunity for post-judgment interest. See *Shaw*, 478 U.S. at 318, 106 S.Ct. 2957.

5

Seen in the light of the standards of legal review that we must apply to the question of whether Congress has waived the sovereign's right to refuse to pay interest, we think there necessarily is ambiguity in the meaning of the word "all" in section 1961(c)(2) and the phrase "except as provided in" in section 1961(b), as well as in the relationship between section 1961 and the Judgment Fund statute. Any of these ambiguities alone, given the legal test to be applied, is enough to defeat the claim to post-judgment interest made by the Oil Companies, as they candidly conceded at oral argument. The statutes cited by the Oil Companies do not offer an "unequivocal" waiver of sovereign immunity, *Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349 (quoting *King*, 395 U.S. at 4, 89 S.Ct. 1501), for post-judgment interest sufficiently broad to encompass interest on the Oil Companies' contract judgment, especially when the statutes are strictly construed in favor of the sovereign, *Shaw*, 478 U.S. at 318, 106 S.Ct. 2957.

6

Given that sections 1961(c)(2) and 1961(b) are ambiguous, the legislative history of the FCIA is legally irrelevant: If Congress has left us with an ambiguous statute, no waiver of sovereign immunity can be found, regardless of what Congress may or may not have intended as a purpose for its statute. Nonetheless, lest there be any lingering doubt that perhaps Congress intended to depart from the historical narrow waiver of immunity for post-judgment interest (as unambiguously reflected in pre-FCIA law), the legislative history of the FCIA makes absolutely certain that Congress intended that the new statutes fashioned to make way for the new Federal Circuit were not to change

the narrow waiver of immunity that preceded the FCIA. Subsections (c)(2) and (b) of section 1961, as well as 31 U.S.C. § 1304(b), were enacted as part of the FCIA in 1982, and the FCIA's legislative history strongly suggests that Congress did not intend for these sections to constitute a broad waiver of sovereign immunity for interest on Federal Circuit judgments against the United States other than those judgments described in 31 U.S.C. § 1304(b)(1)(B).

As discussed above, prior to 1982, 28 U.S.C. § 2516(b) and 31 U.S.C. § 724a waived sovereign immunity only for claims for post-judgment interest on Court of Claims (now Federal Circuit) judgments against the United States that the United States sought to have reviewed in the Supreme Court. Although the FCIA's addition of 28 U.S.C. §§ 1961(b) and (c)(2) transformed these two formerly freestanding statutes into statutes referenced by the "except as provided in" provision of section 1961(b), the legislative history of the FCIA shows that Congress intended the FCIA to preserve the preexisting interpretation of these two statutes with respect to post-judgment interest. *See generally Thompson*, 797 F.2d at 1022–26 (discussing the legislative history of the FCIA as relevant to whether 28 U.S.C. § 1961(a) waived sovereign immunity for post-judgment interest on all district court judgments against the United States); *Ulmet v. United States*, 19 Cl.Ct. 527, 537–38 (1990) (discussing the legislative history of 28 U.S.C. § 1961(c)(2) as relevant to whether post-judgment interest accrues on judgments of the Claims Court, now the United States Court of Federal Claims).

The original Senate bill contained language that would have made the United States liable for post-judgment interest on all judgments, "including judgments of the United States [Court of Federal Claims]."

S. 1700, 97th Cong., 1st Sess. § 302(a)(3), 127 *Cong. Rec.* 23,093 (1981). This sweeping potential change to the law was brought to the attention of Congress in a letter from Mr. Stockman, then the Director of the Office of Management and Budget, that advocated for maintaining the "status quo." 127 *Cong. Rec.* 29,865–66 (Dec. 8, 1981) (noting that under the then-current regime "the Federal Government only pays post-judgment interest when it appeals from a Court of Claims judgment to the Supreme Court and loses" and advocating an amendment to "maintain the status quo" under which "interest [would] be paid only during the pendency of unsuccessful appeals to the Supreme Court"). In response to Mr. Stockman's letter, Senator Grassley introduced an amendment to the Senate bill containing essentially the language now found in 28 U.S.C. § 1961(c)(2) and stated that "the amendment . . . retain[s] the status quo with respect to accumulation of interest on judgments of the Court of Claims," now the Federal Circuit. *Id.* at 29,865.

## IV

Because the statutes cited by the Oil Companies do not demonstrate an unequivocal waiver of sovereign immunity from the Oil Companies' claim for post-judgment interest on their contract judgment, no waiver of sovereign immunity has occurred for the post-judgment interest they seek. We affirm the dismissal of the Oil Companies' complaint by the United States Court of Federal Claims.

## COSTS

No costs.

AFFIRMED.

PROST, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion. The majority concludes that sov-

ereign immunity is not waived based on its finding that 28 U.S.C. § 1961(c)(2) is subject to two plausible readings. In my view, however, there is only *one* plausible reading of the statutory language at issue. It is the reading that maintains that "interest shall be allowed on *all* final judgments against the United States in the United States Court of Appeals for the Federal Circuit, at the rate provided in [§ 1961(a)] and as provided in [§ 1961(b)]." 28 U.S.C. § 1961(c)(2) (emphasis added).

## I

The majority errs in reading § 1961(c)(2) as providing a second "plausible" reading for at least four reasons. First, as the majority notes in its discussion of the appellants' arguments, "all" means "all." There is no language in the statute that limits "all" to a specific subset of cases or that creates ambiguity where none exists.

Second, the majority also attempts to trace a path through § 1961(b) that would create ambiguity in § 1961(c)(2). But § 1961(b) merely discusses *how* interest is to be calculated—not whether it is available at all. The § 1961(b) method of computation is to be used "*except* as provided in section 2516(b) [of title 28] and section 1304(b) of title 31." 28 U.S.C. § 1961(b) (emphasis added). And here, "except" means "except." The majority's second "plausible" reading of the statute effectively requires amending "except as provided in" to read "subject to." It is simply not in our power to amend the text of Congressional statutes in such a way.

Third, the majority's reading of § 1961(c)(2) as having a second "plausible" meaning renders significant portions of the statute superfluous. This violates a central canon of statutory construction. *See Freytag v. C.I.R.*, 501 U.S. 868, 877, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (courts should have "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment") (internal quotations and citations omitted). As the Supreme Court has said, "[i]t is . . . not our job to find reasons for what Congress has plainly done; and it *is* our job to avoid rendering what Congress has plainly done . . . devoid of reason and effect." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217–18, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (emphasis in the original).

Fourth, and finally, the majority is incorrect when it implies that the literal reading of § 1961(c)(2) cannot be given effect because it is supported by "nary a word" of legislative history. Clear statutes need not be supported by legislative history in order to be given effect. To deny a clear statute its force based on the absence of legislative history would be an example of the tail wagging the dog.

## II

The majority also rests its conclusion that there is no sovereign immunity waiver on the alternative ground that 31 U.S.C. § 1304 does not provide an unambiguous waiver of sovereign immunity.[1] But it is highly doubtful that a separate statute can trump a clear waiver of sovereign immunity in another statute. In any event, the government has neither raised it as an independent basis for a judgment against the Oil Companies nor argued it before this court. Moreover, there is conflicting case law on whether or not § 1304 can serve as an additional barrier to recovery of post-judgment interest when it conflicts with another more specific statute. In this

---

1. *See* Part III.B.4 of the majority opinion.

case, therefore, § 1304 by itself does not appear to me sufficient to create ambiguity regarding 28 U.S.C. § 1961(c)(2).

For the aforementioned reasons, I respectfully dissent.